LAW OFFICES OF MICHAEL W. CARMEL, LTD.
80 EAST COLUMBUS AVENUE
PHOENIX, ARIZONA 85012-2334
(602) 264-4965
(602) 277-0144 FAX
MICHAEL W. CARMEL (007356)
MICHAEL@MCARMELLAW.COM

FORRESTER & WORTH, PLLC
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012
(602) 271-4250
(602) 271-4300 FAX
S. CARY FORRESTER (006342)
SCF@FORRESTERANDWORTH.COM
ATTORNEYS FOR PLAINTIFF WEST VALLEY VENTURES, LLC

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **WVSV HOLDINGS, LLC**, <br><br> Debtor. | Chapter 11 <br><br> Case No. 2:12-bk-10598-MCW |
| **WVSV HOLDINGS, LLC**, an Arizona limited liability company; and **WEST VALLEY VENTURES, LLC,** an Arizona limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> **FIRST AMERICAN TITLE INSURANCE COMPANY**, a Nebraska corporation, as Trustee; **SUNVAL PARTNERS, LLC**, an Arizona limited liability company; and, **10K, L.L.C.**, an Arizona limited liability company, <br><br> Defendants. | Adv. No. 2:15-ap-00595 <br><br><br> **COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF** |

For their Complaint and Application for Injunctive Relief, Plaintiffs allege as follows:

**Jurisdiction and Venue**

1.     This is a core proceeding within the meaning of 28 U.S.C. § 157(O), over which the court has jurisdiction pursuant to 28 U.S.C. § 1334.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

3.     This is a proceeding under 11 U.S.C. §§ 105 and 1142 in which Plaintiffs are seeking injunctive relief to assist them in enforcing their rights under a confirmed plan of reorganization and preserving the reorganized debtor's beneficial interest in 1,446.5 acres of land in Maricopa County, Arizona.

**The Parties**

4.     Plaintiff WVSV Holdings, LLC ("**WVSV**"), the reorganized debtor in this Chapter 11 bankruptcy case, is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

5.     Plaintiff West Valley Ventures, LLC ("**WVV**") is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona. WVV holds 75% of the equity interests in, and is the sole manager of, WVSV.

6.     Defendant First American Title Insurance Company ("**FATCO**") is a Nebraska corporation that does business in Maricopa County, Arizona. It is sued solely in its capacity as trustee under Trust No. 8435, a dual-beneficiary trust sometimes referred to as a subdivision trust.

7.     FATCO holds legal title to the real property described below, which is located in Maricopa County, Arizona, for the benefit of the beneficiaries of Trust No. 8435.

8.     Defendant Sunval Partners, LLC ("**Sunval**") is an Arizona limited liability company, which holds a 44.2% first beneficial interest in Trust 8435.

9.      The remaining first beneficial interest in Trust 8435 is held by Pacific Coach, Inc. ("**Pacific Coach**"), an Arizona corporation.

10.     Defendant 10K, L.L.C. ("**10K**") is an Arizona limited liability company, which nominally holds the second beneficial interest in Trust 8345.

11.     Two of the principal equity holders in 10K are well-known Phoenix attorneys Leo Beus and Paul Gilbert.

### Events Leading to Confirmation of 10K's Creditor's Plan

12.     WVSV has been litigating with 10K for more than ten years over WVSV's acquisition of approximately 13,260 acres of land in the West Valley.

13.     Out of the total acreage, approximately 3,260 acres (the "**Spurlock Land**") was originally owned by Spurlock Land, LLC and its affiliates ("**Spurlock**") and the remainder was originally owned by 10K (the "**10K Land**").

14.     At the close of escrow, in July of 2003, the Spurlock Land was conveyed to First American, as trustee of Trust No. 8435, for the benefit of Spurlock, as first beneficiary, and 10K, as second beneficiary. A copy of Trust Agreement No. 8435 (the "**Senior Trust Agreement**") is attached hereto as Exhibit "A".

15.     At the same time, the 10K Land and the beneficial interest in the Spurlock Land was conveyed to First American, as trustee of Trust No. 8436, for the benefit of 10K, as first beneficiary, and WVSV, as second beneficiary. Accordingly, WVSV holds the beneficial interest in 10K's position as second beneficiary of Trust No. 8345.

16.     As a result of the foregoing, at the close of escrow, WVSV became the beneficial owner of all of the land in both trusts.

17.     The obligations owing under the senior trust, Trust No. 8345, were wrapped by the junior trust, Trust No. 8346.

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document      Page 3 of 73

18. To date, WVSV has invested more than $19 million in the land, including servicing the indebtedness owing to Spurlock and furthering the entitlement and development of the property.

19. Both before and after the close of escrow, 10K pursued litigation against WVSV and others. The remaining litigation, which remains pending in the Superior Court, involves 10K's claim that WVSV aided and abetted a breach of fiduciary duty by certain third-parties, for which 10K seeks either a multi-million dollar judgment or the rescission of the purchase transactions.

20. WVSV filed its petition under Chapter 11 of the Bankruptcy Code on May 14, 2012.

21. After the bankruptcy filing, WVSV and 10K filed competing plans of reorganization, neither of which was confirmed at the initial confirmation hearing.

22. WVSV and 10K then filed amended plans of reorganization in an effort to address the confirmation issues identified by the Court.

23. WVSV and 10K objected to each other's amended plans.

24. One of the major concerns of WVSV with 10K's plan was that the amounts owing under the senior trust, Trust No. 8345, were required to be paid by July 16, 2015, but 10K's plan forbade WVSV from selling or encumbering any of the trust property, making it impossible to refinance or otherwise obtain funds to satisfy the indebtedness.

25. A joint confirmation hearing was conducted on March 3 and 4, 2014. At the close of evidence, and prior to closing arguments, the parties agreed to settle their disputes and allow 10K's plan to be confirmed, with significant modifications to meet WVSV's concerns.

26. Paul Gilbert was present in the courtroom during most of the confirmation hearing and was actively involved in negotiating the terms of the

settlement, which are reflected in the Settlement Term Sheet attached to, and incorporated in, the confirmation order [DE 373].

27.     Leo Beus was also involved in negotiating the terms of the Settlement Term Sheet.

28.     Sunval, which is represented by Beus Gilbert, PLLC, is also a creditor of WVSV's bankruptcy estate, was on the master mailing list, and cast a ballot opposing WVSV's plan.

29.     In order to address WVSV's concerns over refinancing the senior trust, the following language was included in the Settlement Term Sheet and incorporated in the confirmation order:

> The Debtor shall be permitted to refinance the Senior Trust debt with a replacement loan, encumbering only the existing Senior Trust collateral, on commercially reasonable terms approved by 10K, whose approval shall not be unreasonably withheld. The replacement loan shall be in an amount no greater than the existing balance of the loan being satisfied, and can have no prepayment penalties. Commercially reasonable terms shall be terms comparable to the then-current lending terms of private lenders on raw land loans.

30.     As reflected in the provisions of 10K's Plan, the confirmation order, and the Settlement Term Sheet attached to the confirmation order, one of the primary goals of the settlement was to preserve the *status quo* pending resolution of the lawsuit in the Superior Court.

**The Present Dispute**

31.     WVSV has now arranged for the refinancing of the senior trust indebtedness, and both it and the lender are prepared to close immediately.

32.     The refinancing is to be accomplished pursuant to the terms of a Loan Agreement between Pacific Coach and WVSV, a copy of which is attached hereto as Exhibit "B" (the "**Loan Agreement**").

33.     Under the terms of the Loan Agreement, Pacific Coach has agreed to loan WVSV a total of $4,658,203.20 in order to pay off and refinance the outstanding debt owing under the Senior Trust Agreement.

34.     The loan is to be secured by a First Amendment to Trust Agreement (the "**Trust Amendment**"), in the form attached hereto as Exhibit "C".

35.     As contemplated by the Loan Agreement and Trust Amendment, Trust No. 8345 will continue even though the indebtedness owing to the present first beneficiaries will have been satisfied, in order to secure the amount of the refinancing, and Pacific Coach will become the only first beneficiary.

36.     At present there are two beneficiaries: Pacific Coach, which holds a 55.8% interest, and Sunval, which holds a 44.2% interest.

37.     The Senior Trust Agreement makes the following provisions for amendments:

> This Trust Agreement may be amended only by a written amendment hereto delivered to the Trustee and accepted in writing by the Trustee, subject to the First Beneficiary's written consent until the Purchase Price as set forth in Section V of this Trust Agreement has been paid in full, which consent shall not be unreasonably withheld or delayed, and no purported amendment hereto not complying herewith shall be effective for any purpose as regards the obligation of the Trustee. Any consent by the First Beneficiary . . . shall be by fifty one percent (51%) of the beneficial interests of First Beneficiary. However, any one of the following shall require the consent of one hundred percent (100%) of the beneficial interest of the First Beneficiary: 1. Any change in amount or payment of the Purchase Price. . . .

38.     Although the proposed amendment will not become effective until the Purchase Price (as defined in the Senior Trust Agreement) has been paid in full, and although the amendment involves no change to the Purchase Price, Sunval

has flatly refused to consent to it or even to consider it and FATCO has refused to go forward without Sunval's consent.

39.     Sunval's refusal to give its consent is a violation of the contractual language quoted above, which prohibits it from unreasonably withholding or delaying its consent.

40.     FATCO's refusal to go forward without Sunval's consent is a violation of the contractual language quoted above, which provides that no consent by the first beneficiary is required after the Purchase Price has been paid in full.

41.     FATCO's refusal to go forward without Sunval's consent is also a violation of the contractual language quoted above, which provides that the consent of a minority interest holder, such as Sunval, is only required if the payment terms are being amended. Again, those payment terms will be amended only _after_ the Purchase Price has been paid in full. The Trust Amendment will, therefore, have no effect on Sunval.

42.     Upon information and belief, the principals of Sunval are Leo Beus and Paul Gilbert, and, according to Mr. Sovereign, they are the individuals from whom he received instructions to refuse to consent to the Trust Amendment.

43.     In a final effort to avoid this litigation, WVSV sent Sunval and FATCO an email on July 9, 2015, to which it attached the Trust Amendment with a form of consent that makes clear that it will not become effective until Sunval has been paid in full. In the email, WVSV asked that they commit to sign and deliver the documents to escrow by Monday morning, July 13, 2015, and advised them that if they did not commit to do so by 9:00 a.m. on July 10, 2015, this action would be filed. As of the time of the filing of this Complaint, neither had responded

44.     Upon information and belief, Sunval did not refuse to consent to the amendment out of any genuine concern over its interest in Trust No. 8345, but in an effort to provide a windfall to 10K.

45. Under the terms of 10K's plan, as amended by the confirmation order, if WVSV does not pay the obligations owing under the senior trust when due, 10K can make the payment and require WVSV to deed it the entire 1,446.5 acres.

46. If that were allowed to happen, 10K would acquire the land for approximately $3,220.32 per acre, which is significantly less than its purchase price twelve years ago and its existing release price of $5,000 per acre.

47. At the recent trial in the Superior Court (the matter is currently under advisement), 10K's appraiser, Rick Kalinowski, testified that the value of the land is between $5,837 and $6,000 per acre. Assuming a value of $5,837 per acre, the windfall to 10K would be more than $3.5 million.

48. It would be inequitable to allow 10K to reap such a windfall.

49. A strong likelihood exists that Plaintiffs will prevail on the merits of this action.

50. If the requested injunctions are not issued, Plaintiffs will suffer immediate irreparable injury for which they have no adequate remedy at law.

51. The balancing of hardships weighs in favor of Plaintiffs and supports the issuance of injunctive relief.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. Against defendant FATCO, for the issuance of a mandatory injunction directing it to accept the amendment to the Senior Trust Agreement, provided that the amounts owing under the Senior Trust Agreement have first been paid in full, and further directing it not to accept payment of the amounts owing under the Senior Trust Agreement from 10K, and not to convey the Spurlock Land to 10K, and not to initiate any forfeiture or other enforcement proceedings under the Senior Trust Agreement or applicable law, pending further order of the Court;

B.     Against defendant Sunval, for issuance of a mandatory injunction directing it to consent to the proposed amendment to the Senior Trust Agreement, provided that it is paid all amounts owing to it under the Senior Trust Agreement;

C.     Against defendant 10K, for the issuance of an injunction precluding it from paying the amounts owing under the Senior Trust Agreement or otherwise seeking to compel WVSV or FATCO to convey the Spurlock Land to it pending further order of the Court;

D.     Against all defendants, jointly and severally, for an award of their costs and attorneys' fees incurred herein; and,

E.     For such other and further relief as the Court deems proper under the circumstances.

DATED July 10, 2015.

**MICHAEL W. CARMEL, LTD**

 /s/ Carmel, M.W. (007356)
Michael W. Carmel

**AND**

**FORRESTER & WORTH, PLLC**

 /s/ S. Cary Forrester (006342)
S. Cary Forrester
Attorneys for Plaintiff West Valley
Ventures, LLC

# EXHIBIT "A"

# FIRST AMERICAN TITLE

**ESCROW NO. 1163593**                              **TRUST NO.  8435**

## TRUST AGREEMENT

**This Trust Agreement**, made and entered into this ___ day of July, 2003, by and between FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, AS TRUSTEE, and the following named First Beneficiary:

CALVIN-CROCKETT CATTLE CO.                    Tax I.D. Number: 86-0617521
aka CALVIN CROCKET CATTLE COMPANY
an Arizona general partnership
as to a 39.3958% undivided interest
HC6 Box 1047J
Payson, AZ 85541

DAVID SPURLOCK & SONS GENERAL PARTNERSHIP     Tax I.D. Number: 86-0616256
an Arizona general partnership
as to a 35.0185% undivided interest
11039 South 163rd Street
Gilbert, AZ 85296

MICHAEL E. TIFFANY, a married man             Tax I.D. Number: 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
as to a 13.1319% undivided interest
44 West Keim Drive
Phoenix, AZ 85013

SPURLOCK LAND INVESTORS I LIMITED PARTNERSHIP  Tax I.D. Number: 86-0792010
an Arizona limited partnership
as to a 4.8397% undivided interest
11039 South 163rd Street
Gilbert, AZ 85296

SPURLOCK LAND INVESTORS II LIMITED PARTNERSHIP Tax I.D. Number: 86-0792012
an Arizona limited partnership
as to a 7.6141% undivided interest
11039 South 163rd Street
Gilbert, AZ 85296

190053-4                              1

and the following named Second Beneficiary:

10K, L.L.C.                        Tax I.D. Number: 86-0795713
an Arizona limited liability company
c/o Phoenix Holdings II, L.L.C.
Attention: Brent Hickey
8757 East Via de Commercio
Scottsdale, AZ 85258

the beneficial interest to be vested as set forth herein.

## WITNESSETH

      WHEREAS, there is being conveyed to the Trustee title to the real property, described in that certain Commitment for Title Insurance, a copy of which is immediately hereafter set forth as Page 2 of this Trust Agreement, said property being subject to the matters shown thereon and herein referred to as "Spurlock Property", which is to be held in Trust by the Trustee under the terms of this Trust Agreement; and

      WHEREAS, First Beneficiary and Second Beneficiary (and their respective successors in interest) may hereinafter be referred to jointly as "the Beneficiaries" and this Trust Agreement and the Trust established by this Trust Agreement shall be referred to as "the Trust" or "Trust No. 8435" of the First American Title Insurance Company.

**TRUSTEE IS HEREBY AUTHORIZED TO INSERT A COPY OF THE COMMITMENT FOR TITLE INSURANCE ISSUED IN CONNECTION WITH THE ESCROW CREATING THIS TRUST AGREEMENT AS PAGE 2 OF THIS TRUST AGREEMENT.**

**Approved by:**

(to be initialed by the Beneficiaries)

190053-4                           2

and the following named Second Beneficiary:

10K, L.L.C.                                      Tax I.D. Number: 86-0795713
an Arizona limited liability company
c/o Phoenix Holdings II, L.L.C.
Attention: Brent Hickey
8757 East Via de Commercio
Scottsdale, AZ 85258

the beneficial interest to be vested as set forth herein.

# W I T N E S S E T H

WHEREAS, there is being conveyed to the Trustee title to the real property, described in that certain Commitment for Title Insurance, a copy of which is immediately hereafter set forth as Page 2 of this Trust Agreement, said property being subject to the matters shown thereon and herein referred to as "Spurlock Property", which is to be held in Trust by the Trustee under the terms of this Trust Agreement; and

WHEREAS, First Beneficiary and Second Beneficiary (and their respective successors in interest) may hereinafter be referred to jointly as "the Beneficiaries" and this Trust Agreement and the Trust established by this Trust Agreement shall be referred to as "the Trust" or "Trust No. 8435" of the First American Title Insurance Company.

**TRUSTEE IS HEREBY AUTHORIZED TO INSERT A COPY OF THE COMMITMENT FOR TITLE INSURANCE ISSUED IN CONNECTION WITH THE ESCROW CREATING THIS TRUST AGREEMENT AS PAGE 2 OF THIS TRUST AGREEMENT.**

**Approved by:**

(to be initialed by the Beneficiaries)

190053-4                                      2

NOW, THEREFORE, in consideration of the premises, and of the mutual covenants, conditions and agreements herein contained, the Beneficiaries herein and the Trustee herein agree as follows:

## SECTION I

A.     This Trust Agreement and the Trust are senior to the provisions of a Junior Trust Agreement in connection with Escrow No. 1163594 and Trust No. 8436 ("Junior Trust Agreement") dated the same date as this Trust Agreement, with Second Beneficiary as First Beneficiary under the Junior Trust Agreement and W.V.S.V. Holdings, L.L.C., an Arizona limited liability company ("W.V.S.V.") as Second Beneficiary under the Junior Trust Agreement. The provisions of this Trust Agreement shall control over the provisions of the Junior Trust Agreement.

B.     The Spurlock Property is hereby declared to be held in Trust by the Trustee for the Beneficiaries. The Trustee holds and will hold title to the Spurlock Property in the Trust for the purposes herein set forth and for the purposes of deeding, selling, conveying, receiving payment for or otherwise handling the Spurlock Property upon such terms and conditions and for such prices as the Trustee may be instructed in writing so to do by Second Beneficiary or its authorized representative, subject, however, to the provisions hereof. The Trustee is hereby granted full power to do all lawful acts necessary to accomplish the purposes of the Trust. The "Trust Estate" shall consist of the legal title to the Spurlock Property and all funds received by the Trustee from the lease or sale of the Spurlock Property or any interest in the Spurlock Property (including but not limited to funds received for the granting of licenses, easements or rights, and all rents, issues or profits in, to or upon the Spurlock Property) the Junior Trust Agreement, all junior trust agreements, all contracts and receivables for the sale of all or any portion of the Spurlock Property and all funds received by the Trustee as performance of the obligations of the Beneficiaries created by this Trust Agreement.

C.     Beneficiaries have no knowledge of any violation of any environmental protection, pollution or land use laws, rules, regulations, orders, or requirements, including solid waste, as defined by the U.S. Environmental Protection Agency regulations as 40 C.F.R., Part 261, or the disposal or existence in or on the Spurlock Property, of any hazardous substance as defined by the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, and the Arizona Environmental Quality Act Title 49 Arizona Revised Statutes, by any other environmental law, or by any regulations promulgated thereunder. The knowledge of the Beneficiaries is limited to actual conscious knowledge of the current members of the Beneficiaries and not any other employees or agents of the Beneficiaries, without any duty on the part of any of said members to independently investigate or inquire as to the truth and accuracy of the information set forth in this paragraph.

## SECTION II

A.     Throughout the term of this Trust Agreement and the duration of the Trust hereby established, the whole legal title to the Spurlock Property shall be vested in the Trustee except as

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document        Page 14 of 73

hereinafter provided and no legal interest in and to the Spurlock Property shall be vested in either First Beneficiary or Second Beneficiary. The sole right and power of the Beneficiaries is to benefit from and to enforce the performance of the terms of this Trust Agreement expressly set forth herein.

B.     The interest of the beneficiaries in the Trust is personal property and, except as provided herein, the Beneficiaries have not and shall not have any right or power to apply for or secure the dissolution or termination of the Trust, or the partition or division of any of the Spurlock Property.

## SECTION III

A.     Second Beneficiary and persons claiming under Second Beneficiary shall have the right to possession of the Spurlock Property during the duration of Second Beneficiary's interest in the Trust, subject to the provisions of this Trust Agreement.

B.     Second Beneficiary, when not in default under this Trust Agreement, may cause any unreleased phase of the Spurlock Property (as allowed in Section VI hereof) or a part thereof to be subdivided. Any subdivision plat or plats thereof shall comply with all existing governmental rules and regulations. The Trustee is authorized to execute and record the above mentioned plat or plats and is further authorized by First Beneficiary to file for record such restrictions as Second Beneficiary may submit in connection with the plat or plats. All expenses in connection with subdividing and improving the Spurlock Property, including but not limited to installing street, water lines, sewers or any public utilities, shall be the obligation of Second Beneficiary, provided however, before commencement of any construction on any phase, any such phase must be released per Section VI.

C.     In the event the Second Beneficiary exercises any rights or obligations under the terms and conditions of the Trust to develop and sell the Spurlock Property as unsubdivided land or unimproved lots or parcels as defined in A.R.S. 32-2101, the Second Beneficiary shall fully comply with the provisions of A.R.S. 32-2195.04 or 32-2185.01, and if applicable, also shall file for exemption or qualification with all Federal Acts including, but not limited to the Interstate Land Sales Full Disclosure Act of the Department of Housing and Urban Development, provided, however, the Trustee shall have no liability or responsibility to determine whether or not the Beneficiary complies with the provisions or act.

D.     Upon the instruction of Second Beneficiary, when not in default hereunder, the Trustee is authorized to dedicate any Spurlock Property, subject to the provisions set forth in Section VI hereof, to public use roads, alley or easements and to convey any portions so dedicated to the Town of Buckeye ("Town") or a Community Facilities District.

E.     From time to time, Second Beneficiary shall file an Application (as defined herein) with the Town for the approval of a master plan ("Master Plan") for part or all of the Spurlock Property in the Trust, including any necessary amendment to the Town's General Plan and the Area Plan for the Spurlock Property that was approved by the Town on April 16, 1996 ("Area Plan"). First

190053-4                                          4

Beneficiary shall cooperate reasonably with Second Beneficiary (at no out-of-pocket expense to First Beneficiary) in connection with an Application as defined herein. The Master Plan shall be in substantial conformance with the Area Plan. However, Second Beneficiary shall be entitled to relocate land uses, change sizes and configurations of parcels and lots and make other adjustments as long as the overall character of the Area Plan is not adversely affected and the uses and densities allowed in the Area Plan are not reduced, unless approved by First Beneficiary in writing. Upon the instruction of Second Beneficiary, when not in default under this Trust Agreement, the Trustee is authorized to execute any Application submitted by Second Beneficiary to the Trustee.

At least ten (10) days prior to the date on which Second Beneficiary intends to file an Application, Second Beneficiary shall submit to First Beneficiary a complete copy of the Application and all materials to be submitted therewith, including the proposed Master Plan (collectively, "Application"). The Master Plan shall not include a condition or undertaking that the Spurlock Property be developed as part of the overall development plan of other real property that is not part of the Spurlock Property and 10K Property.

At the time the Town Planning Department releases its staff report, including recommended stipulations pertaining to the Application, Second Beneficiary shall deliver promptly to First Beneficiary a copy of the report. Second Beneficiary shall not be required to obtain the approval of First Beneficiary for any Application or report, including stipulations, if the stipulations are not in conflict with any provision of this Trust Agreement.

All fees and expenses incurred in connection with the Application, including, but not limited to, architect's, engineer's or attorney's fees of Second Beneficiary, shall be the sole responsibility of Second Beneficiary, except for any fees and costs of architects, engineers, attorneys and other Consultants used by First Beneficiary in connection with its review. First Beneficiary shall execute any documents reasonably requested by Second Beneficiary in connection with the Application, including, without limitation, a letter authorizing Second Beneficiary to pursue the Application on behalf of Second Beneficiary in the name of First Beneficiary, and shall otherwise provide reasonable cooperation to Second Beneficiary (at no expense to First Beneficiary) in connection with the Application.

## SECTION IV

Any lien or encumbrance created, suffered or permitted by Second Beneficiary shall not affect the interest of First Beneficiary or the Trustee except to the extent which may be specifically permitted by First Beneficiary under the provisions hereof. Adjudication by any court of competent jurisdiction that the unreleased Spurlock Property, or any part thereof, or the interest of the Trustee or of First Beneficiary therein, is subject to any lien or encumbrance arising from any act or omission of Second Beneficiary (except as permitted by the provisions of this Trust Agreement) shall be a breach hereof by Second Beneficiary and a condition of default hereunder on the part of Second Beneficiary; provided, however, that such breach and default may be remedied by causing such lien or encumbrance to be discharged or at Second Beneficiary's election by procuring and keeping in

effect, at Second Beneficiary's expense, a good and sufficient bond, in form and with sureties acceptable to First Beneficiary, for the payment of any sums finally adjudged to be required to discharge such lien or encumbrance, and securing and keeping in effect a proper court order staying all proceedings for the sale of the Spurlock Property or the affected portion thereof or the interest of First Beneficiary therein.

**SECTION V**

The purchase price ("Purchase Price") for the Spurlock Property is Sixteen Million Two Hundred Twenty Thousand ($16,220,000.00) U.S. Dollars calculated and payable as follows:

      (A)    Four Million Five Hundred Thousand Dollars ($4,500,000) cash, which First Beneficiary acknowledges has been paid by Second Beneficiary to Escrow Agent at the Close of Escrow.

      (B)    Eleven Million Seven Hundred Twenty Thousand Dollars ($11,720,000), which shall be paid to First Beneficiary with interest on the unpaid principal balance from the date of Close of Escrow at the rate of seven percent (7%) per annum, with the first payment to be six (6) months from the date of Close of Escrow and each six (6) months thereafter, with the remaining principal balance and accrued interest to be paid in full on or before twelve (12) years from the date of the Close of Escrow. All principal payments for the release of the Spurlock Real Property as provided in Section VI of this Trust Agreement shall be credited toward the principal payments due from the Second Beneficiary to the First Beneficiary as required in this Trust Agreement.

      (C)    If there is a default by Second Beneficiary under this Trust Agreement, the sole remedy of First Beneficiary shall be the retention of payments from Second Beneficiary to First Beneficiary and the forfeiture or foreclosure of Second Beneficiary's interest in the Trust, and Second Beneficiary shall not be liable to First Beneficiary for any deficiency or other damages, except for damages to the Spurlock Property caused by Second Beneficiary.

**SECTION VI**

At the time when Second Beneficiary is not in default hereunder, any portion of the Spurlock Property within a phase as set forth below, shall be released and conveyed by the Trustee to Second Beneficiary upon the following terms and conditions together with the payment to the Trustee for the benefit of the First Beneficiary of the per acre release price, plus interest on the release price of the first day of the month next succeeding the date of such payment (unless the release price is paid on or before the fifteenth day of the month, in which event the interest needs to be paid only to the first day of such month), plus the Trustee's fees, costs and expenses in connection with such release and conveyance, and any amounts then owed by Second Beneficiary to the Trustee:

Case 2:15-ap-00595-MCW   Doc 1   Filed 07/10/15   Entered 07/10/15 10:22:46   Desc
Main Document    Page 17 of 73

A.       Each release shall be for $5,000 per acre plus accrued interest applicable to the acres to be released ("Release Price"). All principal payments of the Purchase Price, including the $4,500,000 payment paid at the Close of Escrow, shall be applied toward the Release Price to be paid for the releases as provided in this Trust Agreement.

B.       The releases shall be on a phase by phase basis, with each phase to be released as provided in this Section before commencement of any construction on the phase.

C.       The Spurlock Property shall be released in a pattern that is consistent with the Area Plan (as defined herein), including the provision for unrestricted access to the unreleased Spurlock Property. First Beneficiary, and not Trustee, shall be responsible for confirming and enforcing Second Beneficiary's compliance with this provision. The Trustee shall not be involved in or concerned with Second Beneficiary's compliance, and the Trustee shall have the right to rely upon Second Beneficiary's written confirmation that the pattern is consistent with the Area Plan, unless otherwise advised by First Beneficiary.

D.       If phases are not adjacent to each other, Second Beneficiary shall be entitled to obtain the release of the part of the Spurlock Property between the phases within the alignment of the major arterial roadways shown in the Area Plan (or the Master Plan, if one is approved for the affected Spurlock Property), as adjusted by final engineering for roadways, utilities and other infrastructure improvements. If a phase that is to be released includes part of a roadway, open space or similar area on part of the adjacent Spurlock Property that is not to be released ("Adjacent Unreleased Real Property") and the Town requires that Second Beneficiary construct and install the improvements on the Adjacent Unreleased Real Property, Second Beneficiary shall be entitled to obtain the release of the Adjacent Unreleased Real Property. However, the Adjacent Unreleased Real Property shall not exceed ten percent (10%) of the Spurlock Property that is released for the payment from Second Beneficiary as provided in this subsection, without the consent of First Beneficiary, which consent shall not be unreasonably withheld or delayed, and the Adjacent Unreleased Real Property shall be improved in the same phase as the other Spurlock Property that is released for the roadway, open space or similar area. Second Beneficiary shall pay for the Adjacent Unreleased Real Property to be released as provided in this subsection when it releases the phase that includes the Adjacent Unreleased Real Property that is released as provided in this subsection.

E.       Phase I and each subsequent phase of development of the Spurlock Property each shall be at least 160 acres in size, and the 160 acres can be taken from either or both of the Spurlock Property or the real property of Second Beneficiary that is held by Trustee under the Junior Trust Agreement (herein referred to as the "10K Property"). The frontage of the phase on Sun Valley Parkway shall not be greater, on a cumulative basis, than the percentage that the acres in the subject phase bear to the total acres of the Spurlock Property. The Spurlock Property has a total of 5.50 miles of frontage on Sun Valley Parkway (or 29,040 linear feet). If, for example, Phase I is comprised of 160 acres of the Spurlock Property, the frontage on Sun Valley Parkway for Phase I cannot exceed 1,432 linear feet (160 acres ÷ 3,244 = 4.9322% and 29,040 linear feet multiplied by 4.9322% = 1,432 linear feet). The frontage limitation shall apply to each of the Spurlock Property

and the 10K Property, and the limitations shall be separately calculated for the Spurlock Property and the 10K Property.

Any amount paid as a release price shall be applied toward payment of the next principal installment or installments to become due in the order of their maturity (i.e., any principal payments for the release of the Spurlock Property shall apply first to the principal payment next due, then to the following principal payment due, and so on), and any amount paid as interest in connection with the payment of such release price shall be applied toward interest. The periodic principal payments shall apply cumulatively toward the release of the Spurlock Property.

The term "acre" as used herein means the entire area of any portion of the Spurlock Property to be released to the center line of any abutting street, alley or other public way, the area of which was included in the Spurlock Property at the inception of the Trust (or in the case of such a public way abutting the exterior boundary of the Spurlock Property, to such exterior boundary).

At the time of or prior to the time of requesting release of any portion of the Spurlock Property, Second Beneficiary shall furnish to the Trustee, and the Trustee shall furnish to the First Beneficiary, the following:

1. The legal description of the phase and a statement of the phase acreage;

2. A map or plat showing the Area Plan (or the Master Plan, if one is approved for the Spurlock Property to be released), the phase to be released, and the unrestricted access to the unreleased Spurlock Property;

3. A statement of the Spurlock Property frontage of the phase on Sun Valley Parkway;

4. A map or plat showing any Adjacent Unreleased Real Property required to be released for roadway, utilities or other improvements both the legal description and the acreage;

signed by a civil engineer or land surveyor licensed in Arizona, and the Trustee shall be entitled to rely on such information in determining the release price of such portion of the Spurlock Property. The Trustee shall not release the Spurlock Property as requested by the Second Beneficiary until the earlier of (i) First Beneficiary's written consent to the requested release or (ii) ten (10) days after the Trustee gives First Beneficiary a copy of the request. Further, the Trustee shall give notice to First Beneficiary within ten (10) days after a release of the Spurlock Property, which notice shall include sufficient information to show the part of the Spurlock Property that the Trustee released.

The rights of Second Beneficiary to release the Spurlock Property in accordance with the terms of this Section shall be subject to the terms of Section XVI hereof.

190053-4

8

F.    At the inception of the Junior Trust Agreement, W.V.S.V. will assume a promissory note secured by a deed of trust encumbering the 10K Property dated June 7, 1995, in the original principal amount of $7,396,137.50 (with a principal balance as of June 4, 2002, of $6,527,908.00), to Cactus Fields Realty Corp. ("10K Senior Note and 10K Senior Encumbrance"). Second Beneficiary shall advise the Trustee, and the Trustee shall advise the First Beneficiary of the principal balance of the 10K Senior Note as of the date of the inception of the Junior Trust Agreement. The 10K Senior Note and 10K Senior Encumbrance were assigned to Citicorp USA, Inc. by an Assignment recorded May 5, 1990. The $4,500,000 payment required by Second Beneficiary at the Close of Escrow shall entitle Second Beneficiary to a release of up to 900 acres of the Spurlock Property. The assumption and payment of the principal amount of the 10K Senior Note and 10K Senior Encumbrance by W.V.S.V. will entitle W.V.S.V. to the release of the Spurlock Property and/or the 10K Property equal to $5,000 per acre, rounded down to the closest acre ("Release Credit"). However, W.V.S.V. must pay the 10K Senior Note in full and must obtain a release of the 10K Senior Encumbrance before W.V.S.V. will be entitled to release any of the Spurlock Property other than the 900 acres referred to above.

The Release Credit will be used by W.V.S.V. to release any part of the Spurlock Property and/or the 10K Property. The Trustee shall apply the Release Credit as follows:

If W.V.S.V. releases more of the Spurlock Property than is allowed in this Section VI, Second Beneficiary shall pay to First Beneficiary the Net Payment (as defined herein) paid by W.V.S.V. to Second Beneficiary until Second Beneficiary has paid First Beneficiary the amount of the Release Price required in this Section VI, plus interest on the unpaid balance of the Release Price at the rate of seven percent (7%) per annum from the date when the release of the Spurlock Property is for more acres than is allowed in this Section VI. "Net Payment" shall be seventy five percent (75%) of any Release Price Payment as defined in the Junior Trust Agreement and fifty percent (50%) of any Profit as defined in the Junior Trust Agreement that is paid by W.V.S.V. to Second Beneficiary as provided in the Junior Trust Agreement. For purposes of the preceding sentence, the "Release Price" and "Profit" shall be reduced by any payment paid by Second Beneficiary to Finder (as defined herein) out of the Release Price and Profit. Conversely, if W.V.S.V. releases less of the Spurlock Property than is allowed in this Section VI, Second Beneficiary shall be entitled to retain any payments of principal and interest due from W.V.S.V. to Second Beneficiary under the Junior Trust Agreement until Second Beneficiary has retained an amount equal to the amount that Second Beneficiary should have received from the Release Credit, plus interest on the unpaid balance at the rate of seven percent (7%) per annum from the date when the release of the 10K Property is for more acres than is allowed in the Junior Trust Agreement. Attached to hereto as Exhibit A (Release Adjustment) is an example of how this provision will be applied based upon assumed facts.

Second Beneficiary may, at its election, require the Trustee to convey part of the Spurlock Property for rights of way, school sites, areas for utilities and amenities, and for other uses its deems necessary prior to the Approvals (as defined herein) being obtained for the first phase on the Spurlock Property, subject to compliance with the release provisions in this Trust Agreement, by the payment by Second Beneficiary for the Release Price for such release. Any such release can be for

less than 160 acres, and the released acres shall apply against the minimum 160 acre release as required herein. For purposes of this Trust Agreement, "Approvals" shall be final approval from the Town for a community master plan for the first phase and other required approvals for commencement of construction for the first phase. The Approvals shall not be deemed to be obtained until the time period within which a referendum can be initiated has expired.

The payments that are to be made by First Beneficiary to Second Beneficiary pursuant to the third paragraph of this Section VI (F) shall be from principal payments (not interest payments) that are payable to First Beneficiary by Second Beneficiary as part of the Purchase Price. Further, the payments that are to be paid by the Beneficiaries pursuant to the third paragraph of this Section VI (F) shall be made from payments that are paid to the Beneficiaries at the time, or after, the payments becomes necessary, rather than from payments that are paid to the Beneficiaries prior to the time the payments become necessary.

Second Beneficiary shall promptly give to the Trustee and First Beneficiary all budgets and calculations of Profit prepared by W.V.S.V. and Second Beneficiary until the Release Credit is exhausted and the adjustment set forth in the third paragraph of this Section VI is completed.

Trustee shall maintain a separate accounting with calculations for the Release Credit until the Release Credit is exhausted and the adjustments set forth in the third paragraph of this Section VI is completed, and the Trustee shall give to Second Beneficiary and First Beneficiary the accounting and calculations as they are revised and prepared.

The obligations of Second Beneficiary to First Beneficiary in this Section VI are secured by the first beneficial interest of Second Beneficiary in the Junior Trust Agreement between Second Beneficiary, W.V.S.V. and the Trustee, pursuant to an Assignment of Beneficial Interest in Trust and Security Agreement ("Collateral Assignment"). The provisions of the Collateral Assignment are incorporated into and made a part of this Trust Agreement, and Second Beneficiary and Trustee shall comply with the provisions of the Collateral Assignment as though the provisions are set forth in this Trust Agreement.

## SECTION VII

Second Beneficiary does hereby assume and agree to pay all taxes and assessments levied and assessed upon and against or secured by a lien upon the Spurlock Property for the year in which the Trust becomes effective and all subsequent years. In the event Second Beneficiary shall fail to pay the taxes or assessments prior to the delinquency thereof, or any other charges which are the obligation of Second Beneficiary, then First Beneficiary shall have the right to advance any amounts necessary to pay the same, and any payments so made by First Beneficiary shall be prima facie evidence of the necessity therefore, and the amounts so paid shall be repaid to First Beneficiary by Second Beneficiary on demand, together with interest thereon at the same rate as provided for in the principal obligation hereinbefore provided, from the date of such payment by First Beneficiary. The Beneficiaries shall notify the County Assessor to direct all tax notices and bills applicable to the

Spurlock Property c/o the Trustee at the Trustee's address. The Trustee shall forward any tax bills or any notices concerning taxes to the First Beneficiary and the Second Beneficiary at their respective addresses.

Second Beneficiary shall on June 1st of each year, beginning with the first June 1 following the date of the Close of Escrow, provide to First Beneficiary a complete assessor's map for all the unreleased Spurlock Property under this Trust Agreement together with evidence that the prior year's taxes have been paid in full. (For example, if the date of the Close of Escrow is September 16, 2003, then the assessor's map, etc., shall be provided no later than June 1, 2004.) First Beneficiary may procure independent of the Trust a tax service contract or other similar service to keep First Beneficiary apprised of the status of the real property taxes and assessments. First Beneficiary and Second Beneficiary shall share equally in the cost and expense of the tax service contract or similar service.

## SECTION VIII

Any provisions of this Trust Agreement to the contrary notwithstanding, whenever Second Beneficiary is not in default in any of its obligations hereunder, the Trustee is authorized to sell pursuant to Second Beneficiary's sole and absolute discretion in an escrow with a title insurance company or escrow company acceptable to Second Beneficiary, all of the Spurlock Property or any phase of the Spurlock Property as set forth in Section VI (or all or any portion of the Second Beneficial Interest herein as it relates to the Spurlock Property), subject to compliance with the provisions of Section VI of this Trust Agreement. PROVIDED, HOWEVER, that until the Purchase Price as set forth in Section V hereof has been paid in full the principal of the sale price of the Spurlock Property sold shall be of an amount which is sufficient to pay the Release Price of the Spurlock Property sold, taxes or assessments or the Seller's prorated share thereof necessary to close the sale, and the expenses of sale including but not limited to any real estate commission involved in such sale. The Trustee shall be entitled to execute and deliver all instruments and perform all acts necessary or appropriated to the completion of any sale made pursuant to and in accordance with this Section regardless of any default of Second Beneficiary or forfeiture of Second Beneficiary's interest in the Trust occurring after such sale. Second Beneficiary shall be entitled to modify the provisions of or rescind any sale made pursuant to this Section provided that the modification is consistent with the provisions of this Trust Agreement. Any such sale shall be made for part cash, with the balance on deferred payments to be evidenced by the Junior Trust Agreement wherein Second Beneficiary herein will be First Beneficiary and the Trustee herein will be the Trustee in the Junior Trust Agreement. The Junior Trust Agreement shall be subject to all the provisions of this Trust Agreement.

## SECTION IX

A. All funds constituting a portion of the Trust Estate shall be distributed by the Trustee according to the following priorities, except as provided in B hereof:

190053-4

11

1. **First:** To reimburse the Trustee for any payment made by the Trustee which is reimbursable under the provisions hereof, provided however, to the extent that the Trustee is reasonably able to do so, all reimbursable payments shall be first approved by the Beneficiary to whom the payment will be charged. If advance approval is not possible, the Trustee shall act reasonably in connection with the need and the amount of the payment.

2. **Second:** To the payment of all damages, if any, incurred by the Trustee in the administration of the Trust, provided however, the Trustee shall not be entitled to the payment for damages if they are caused by the breach of this Trust Agreement or the negligence or willful misconduct of the Trustee.

3. **Third:** To the payment of fees, expenses and charges of the Trustee in conformity with the fee schedule of the Trustee then in effect and as may be amended from time to time, without notice.

B.      Upon the sale of any phase wherein legal title to which is held by the Trustee and in which the First Beneficiary has an interest at the date of the sale, the balance of all funds arising from the sale shall be distributed by the Trustee according to the following priorities:

**First Priority:** To the payment of the escrow fees, title insurance premiums, taxes or assessments on the Spurlock Property (or the Second Beneficiary's prorated share thereof), and real estate broker's commissions in connection with the sale.

**Second Priority:** To the payment of the Finder's Fee (as defined herein). First Beneficiary is obligated to pay a finder's fee ("Finder's Fee") to Serica Vermogensverwaltung und Finanz Anstalt ("Finder") in the amount equal to six percent (6%) of the Purchase Price, only after development of the Property has begun. Development of the Spurlock Property shall be deemed to have begun when construction on the Spurlock Property is commenced after the Approvals are obtained by W.V.S.V. as provided in Section 12 (Approvals Condition) of the Purchase and Sale Agreement, including a building permit from the Town. First Beneficiary shall not pay Finder out of the $4,500,000 down payment that is paid by Second Beneficiary to First Beneficiary at the Close of Escrow or payments of principal and interest that are made by Second Beneficiary to First Beneficiary before development has begun. Finder may render periodic invoices for the part of the Finder's Fee that is earned, which shall be satisfied by the issuance of an interest bearing promissory note in a form satisfactory to Finder and assignable at Finder's discretion. Finder does not accept liability to either party or to existing debt holders or in any other way for failure to place the Spurlock Property and the Transaction or secure participations or funding nor does it accept or endorse any of W.V.S.V.'s obligations hereunder or under the W.V.S.V. Agreement. First Beneficiary hereby assigns to the Finder as follows:

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document        Page 23 of 73

Fifty percent (50%) of all cash payments of principal and interest from the Second Beneficiary to First Beneficiary after development of the Property has begun (excluding the $4,500,000 paid at the Close of Escrow) until the principal amount of the Finder's Fee is paid in full, including interest at the rate of seven percent (7%) per annum from the date of this Trust Agreement on the unpaid principal balance of the Finder's Fee.

A non-refundable investigation/mobilization fee of $25,000.00 has been paid to the Finder, and $6,145 of that payment shall be credited against the Finder's Fee.

**Third Priority:** To the First Beneficiary until sufficient funds have been paid to First Beneficiary to permit the release of the sold Spurlock Property from the interest of First Beneficiary. The payments to the First Beneficiary shall be in the percentages and to the addresses set forth on the 1st page of this Trust Agreement.

**Fourth Priority:** To Second Beneficiary the remainder of the funds.

C.     All disbursements made by the Trustee may be made in either cash, check as the Trustee determines, provided however, disbursement of any funds may be made by intra-bank transfer or by bank wire transfer at the election of the First Beneficiary and Second Beneficiary for their respective funds. First and Second Beneficiary agree that all money payable to the Trustee shall be paid by cashier's check or by bank wire transfer. The Second Beneficiary shall not be in default for failure to make payment and interest shall not accrue on any amounts owed to First Beneficiary when the funds required by this Trust Agreement are wired by Second Beneficiary and a wire transfer confirmation has been issued by the initiating bank. If the Trustee is authorized to accept any payment in the form of check, draft, money order, or similar payment, the Trustee shall use reasonable and prompt efforts to make good all payments to the Trustee, provided however, the Trustee shall be under no obligation to disburse any funds represented by check, draft, money order or similar payment and no check or draft shall be payment to the Trustee in compliance with any of the requirements hereof, until such check or draft has been finally honored; provided, further, all payments to remedy a default shall be made in cash, cashier's check or bank wire transfer.

**SECTION X**

A.     If Second Beneficiary fails to pay any installment of principal or interest as and when due hereunder or fails to pay any other sum properly payable hereunder or breaches any covenant, condition or stipulation hereof or if any second beneficiary under any trust that is junior to this Trust Agreement is declared in default, then First Beneficiary may declare a default or breach by delivering to the Trustee a written Notice of Default together with written instruction to serve the Notice of Default upon Second Beneficiary, and such Notice of Default shall specify the nature of the default or breach. Second Beneficiary shall not be deemed in default until receipt by the Trustee from First Beneficiary of such Notice of Default. The Notice of Default may contain a notice of reinstatement of the time of the essence clause, if the Trustee deems it necessary. If the default or breach be not remedied within thirty (30) days after service of the Notice of Default upon Second Beneficiary then

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document        Page 24 of 73

First Beneficiary may declare all sums agreed to be paid hereunder immediately due and payable. The election to accelerate shall be effective upon receipt by the Trustee of written notice of such election from First Beneficiary. If the First Beneficiary so elects to accelerate, First Beneficiary shall cause notice of such election to be served by the Trustee upon Second Beneficiary. First Beneficiary may also upon expiration of the thirty (30) day period and failure by Second Beneficiary to remedy the default or breach within the period, may enforce a forfeiture by notice in the manner hereinafter agreed upon and Second Beneficiary shall not be liable for any deficiency or any other damages, except for any damages to the Spurlock Property caused by Second Beneficiary (it being understood that Second Beneficiary shall not be liable for any damage to the Spurlock Property caused by the Second Beneficiary under the Junior Trust Agreement unless allowed by the Second Beneficiary).

B.      Forfeiture by notice shall be made in the following manner:  First Beneficiary by written instruction to the Trustee shall cause the Trustee to serve a Notice of Declaration of Forfeiture upon Second Beneficiary.  The Notice of Declaration of Forfeiture shall contain notice of acceleration, if so elected; a statement as to the nature of the default or breach; and the period during which Second Beneficiary shall be entitled to perform its obligations hereunder which shall be equal to the period specified in Section 33-742 Arizona Revised Statutes. Upon failure by Second Beneficiary to correct the default or breach within the period, then, without further notice, all right, estate and interest created by this Trust Agreement or then existing in favor of Second Beneficiary or any one who claims under Second Beneficiary, in and to all unreleased Spurlock Property, shall cease, terminate and become null and void, and all equitable and legal interests and estates in all such unreleased Spurlock Property and any improvements on any such unreleased Spurlock Property and all other appurtenances, together with all sums of money theretofore paid by Second Beneficiary hereunder, shall revert to, vest in and become the sole property of the Trustee for the benefit of First Beneficiary as liquidated damages for such default or breach and not as a penalty. All sums of money received by the Trustee for the account of Second Beneficiary from the sale of the unreleased Spurlock Property subsequent to service of the Notice of Default shall be impounded by the Trustee for the use and benefit of Second Beneficiary to remedy Second Beneficiary's default or breach; provided, however, upon failure by Second Beneficiary to remedy the default or breach, all sums impounded shall revert to and vest in First Beneficiary as liquidated damages as hereinabove provided in this Section.  The Beneficiaries acknowledge that the amount of liquidated damages is fair given the uncertainties in calculating such damages.

C.      Upon expiration of the period specified in the Notice of Declaration of Forfeiture, the Trustee may serve a Notice of Completion of Forfeiture upon Second Beneficiary; however, effectiveness of the forfeiture shall not be conditioned upon service of such Notice of Completion of Forfeiture. After completion of forfeiture, First Beneficiary may instruct the Trustee to convey all unreleased Spurlock Property and to deliver all funds held by the Trustee for the account of First Beneficiary to First Beneficiary and the Trustee shall have thirty (30) days within which to comply with such instruction.

190053-4                                             14

D.      Within the context of this Section wherever notice is required to be served on Second Beneficiary, the Trustee shall cause copies of the notice to be served upon any beneficiary having a derivative interest from Second Beneficiary as shown on the records of the Trustee.

E.      As a condition of the remedy of any default or breach as provided in this section Second Beneficiary shall within the period as provided herein pay all costs of the Trustee for administering the provisions of this Section.

F.      At any time that Second Beneficiary's interest in this Trust Agreement is forfeited, this Trust Agreement shall become a single beneficiary trust agreement for the sole benefit of the individuals and entities who comprise the First Beneficiary. At such time, any decisions regarding the Spurlock Property shall be made by fifty one percent (51%) of the beneficial interests of the First Beneficiary. Trustee shall accept and comply with any such decision that is given in writing to Trustee.

## SECTION XI

A.      Trustee shall not be required, in dealing with the Spurlock Property or in otherwise acting hereunder, (1.) to enter into any contract or other obligation in its proprietary corporate capacity, nor, (2.) to make itself individually liable to pay or incur the payment of any damages, attorneys' fees, fines, penalties, forfeitures, costs, charges or other sums of money whatsoever. The Trustee shall have no individual liability or obligation whatsoever, arising from its ownership, as the Trustee hereunder, of the legal title to the Spurlock Property, or with respect to any act done or contract entered into or indebtedness incurred in relation to the Spurlock Property or in otherwise acting hereunder. The Trustee reserves the right to incorporate the above limitations of its liability in any instrument or document executed in connection with the Trust.

B.      Trustee shall not be required to pay, discharge or attend to the release of any claim, lien or encumbrances (including but not limited to mechanics or materialmen's liens, real and personal property taxes, assessments, income taxes, inheritance or estate taxes, excise taxes, special assessments or penalties and interest thereon) involving the Trust or any of the Spurlock Property or interest hereunder, or any transaction relating to the Trust. If there shall be asserted any such claim, lien or encumbrance of any nature against the Spurlock Property, the Trustee shall have no duty or responsibility to defend against such assertion or to take any other action with respect thereto and shall forward to only Second Beneficiary any notice the Trustee receives concerning such claim, lien or encumbrance. First Beneficiary may, as authorized in this Trust Agreement, procure independent of the Trust a tax service contract or other similar service to keep First Beneficiary apprised of the status of the real property taxes and assessments.

C.      If the Trustee shall pay or incur any liability to pay any money on account of this Trust, or incur any liability to pay any money on account of any litigation as a result of holding title to the Spurlock Property or otherwise in connection with the Trust, the Beneficiaries jointly and severally shall be required to pay the Trustee for any payment or liability that is incurred by the Trustee; provided, however, that Beneficiaries shall not be required to pay the Trustee for any payment or

liability that is caused by the breach of this Trust Agreement or the negligence or willful misconduct by the Trustee. If any payment is owed by the Beneficiaries to the Trustee under this subsection, it shall bear interest at the rate of ten percent (10%) per annum from the date the payment is owed by the Beneficiaries to the Trustee until it is paid. Beneficiaries shall pay all such payments made by the Trustee together with its expenses, including reasonable attorney's fees. The Trustee shall have a lien on the Spurlock Property to secure performance of the obligations of the Beneficiaries under the Trust, which lien shall be senior to the respective interests of the Beneficiaries. The Trustee shall not be required to convey or otherwise deal with the Spurlock Property so long as any money is due the Trustee under this Trust Agreement, or defend any legal proceedings on account of or involving the Trust or any property or interest hereunder or any transaction relating to the Trust. If one Beneficiary is the cause of the liability of, or payment by, Trustee under this subsection, that Beneficiary shall immediately pay the other Beneficiary an amount equal to any payments made by the other Beneficiary to the Trustee.

D. In the event the Trustee is instructed or requested to do (or refrain from doing) any act, performance of which (or non-performance of which), in the Trustee's sole opinion, would subject the Trustee to unreasonable risk of liability, expense or litigation, the Trustee shall have no obligation to perform such act (or to refrain from performing such act) except upon being furnished instructions or indemnity adequate, in the Trustee's sole absolute and uncontrolled discretion, to protect the Trustee against such risk of liability, expense or litigation, or except in accordance with an adjudication by a court of competent jurisdiction (and the determination of all appeals and expiration of all applicable appeal periods) in any appropriate legal or equitable proceeding, including, without limiting the generality of the foregoing, an action for an accounting or to secure approval of an accounting, a suit for a declaratory judgment, an interpleader action, or a suit for instructions to the Trustee. In any such action the Trustee shall be entitled to a judgment against all the Beneficiaries for any expenses and costs including reasonable attorney's fees incurred in such action, to the extent that the court may determine.

E. Any instruction notice to the Trustee shall be in writing and in such form as the Trustee may require; provided, however, that the Trustee may, in its discretion, act on oral instruction or notice.

F. Trustee shall have no liability to any Beneficiary or its successors or assigns on account of electing to act in accordance with any provision hereof, as reasonably construed by the Trustee, regardless of whether or not such provision may subsequently be reformed or declared invalid or unenforceable or otherwise construed in any litigation or proceeding.

## SECTION XII

This Trust shall terminate upon conveyance of all of the Spurlock Property by the Trustee in accordance with the provisions hereof, and the distribution of all of the funds in the hands of the Trustee to the person or persons entitled thereto in accordance with the terms hereof. But in no event shall this Trust continue for more than 26 years past the date hereof, unless requested by Beneficiaries and consented to by the Trustee.

190053-4                                    16

## SECTION XIII

This Trust Agreement may be amended only by a written amendment hereto delivered to the Trustee and accepted in writing by the Trustee, subject to the First Beneficiary's written consent until the Purchase Price as set forth in Section V of this Trust Agreement has been paid in full, which consent shall not be unreasonably withheld or delayed, and no purported amendment hereto not complying herewith shall be effective for any purpose as regards the obligation of the Trustee. Any consent by the First Beneficiary, or any instructions by the First Beneficiary to the Trustee, shall be by fifty one percent (51%) of the beneficial interests of the First Beneficiary. However, any one of the following shall require the consent of one hundred percent (100%) of the beneficial interests of the First Beneficiary:

      1.     Any change in the amount or payment of the Purchase Price.

      2.     Any decision that favors one or more of the individuals and entities who comprise the First Beneficiary over one or more of the individuals and entities who comprise the First Beneficiary.

The interest of either of the Beneficiaries may be assigned in whole or in part by either Beneficiary without the consent of the other Beneficiary or the Trustee, subject, however, to the substitution of the Beneficiary by an amendment to this Trust Agreement. The Trustee shall be entitled to treat any written instrument purporting to constitute an assignment or transfer of any interest of any Beneficiary as such proper amendment. Amendments to this Trust Agreement not affecting any provision hereof except the identity of the persons having rights with respect to beneficial interests hereunder shall not require the concurrence of parties (other than the Trustee), whose rights and obligations are not thereby affected. The Trustee shall accept any such amendment presented to it with proof satisfactory to the Trustee of its genuineness, unless it shall purport to create obligations or risk of liability on the Trustee which the Trustee is not willing to assume; and upon such endorsement the amendment shall become a part of this Trust Agreement for all purposes to the same effect as though set forth in full herein.

## SECTION XIV

Trustee shall upon inquiry by any person, disclose to such person the identity, address as shown by the Trustee's records, and nature of the interest of each person owning or holding, absolutely or as security, any beneficial interest in the Trust. Provided however, the right to disclose as set forth in this section shall be limited to disclosure that is required by law. Otherwise, Second Beneficiary, First Beneficiary and the Trustee understand and agree that the provisions of this Trust Agreement are confidential and that disclosure as to the terms and conditions contained in this Trust Agreement and the information contained in this Trust Agreement shall not be made without the prior written consent of First Beneficiary and Second Beneficiary, which consent shall not be unreasonably withheld or delayed. Second Beneficiary, First Beneficiary and the Trustee acknowledge that First Beneficiary and Second Beneficiary may suffer substantial and irreparable

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document      Page 28 of 73

harm if any of the terms and conditions contained in this Trust Agreement are disclosed to a third party without the prior written consent of First Beneficiary and Second Beneficiary. This provision shall not, however, extend to disclosures by First Beneficiary, Second Beneficiary, W.V.S.V. and Finder to prospective investors, lenders, attorneys, accountants, architects, engineers, other consultants, municipalities, other governmental agencies, utilities, contractors and other agents and independent contractors on a need to know basis in connection with their furtherance of the purpose of Second Beneficiary and First Beneficiary in connection with this Trust Agreement, nor shall this provision be applicable to disclosures by First Beneficiary, Second Beneficiary, W.V.S.V., Finder or the Trustee pursuant to a court order or disclosures to state and federal regulatory officials. The officers, directors, members, partners, employees and agents of First Beneficiary, Second Beneficiary, W.V.S.V., the Trustee and Finder shall be given disclosure regarding this Trust Agreement only on a "need to know basis", and those who are given disclosure shall sign a letter in the form and substance of the letter attached to this Amendment as Exhibit B.

## SECTION XV

In the event the First Beneficial interest is held by two or more Beneficiaries, one Beneficiary shall be designated, by separate instructions to receive all notices and billings. Unless and until Trustee is otherwise instructed in writing, all notices and billings shall be sent to:

Attention: Glen Spurlock
11039 South 163rd Street
Gilbert, AZ 85296

In the event the Second Beneficial interest is held by two or more Beneficiaries, one Beneficiary shall be designated, by separate instructions to receive all notices and billings, except Trust Default and Forfeiture Notices.

Service of any notice of any kind upon any Beneficiary by the Trustee may be made in person or by mail and shall be deemed complete when delivered, in person to the Beneficiary, or when deposited in the United States mail, ordinary postage prepaid, addressed to the Beneficiary at the last mailing address of the Beneficiary filed in writing with the Trustee.

## SECTION XVI

"Release Property" is all the Spurlock Property conveyed to the Trustee which Second Beneficiary shall be entitled to have conveyed to Second Beneficiary or its nominee, free and clear of any right, title, claim or interest of First Beneficiary, by reason of any provision hereof or of any payment made by Second Beneficiary pursuant hereto, and which Second Beneficiary shall have designated by written instrument delivered to the Trustee while not in default or before expiration of the thirty (30) day period provided for in the Notice of Default set forth in Section X-A.

190053-4

18

"Unreleased Property" is all the Spurlock Property conveyed to the Trustee which is not Release Property.

## SECTION XVII

Time is of the essence in the performance of each and every obligation hereby imposed.

Waiver of any breach hereof or default hereunder by any Beneficiary shall not constitute a waiver of or consent to any continued, additional or separate breach or default, whether of the same or similar nature or otherwise.

## SECTION XVIII

"Trustee" means First American Title Insurance Company, only in its capacity as the Trustee of the Trust and not in its proprietary corporate capacity nor as the Trustee of any other trust.

## SECTION XIX

In the event any dispute arises under the terms of this Trust Agreement, the Beneficiaries agree to submit their dispute to arbitration. However, this section shall not apply to a failure to pay a determined amount of money.

In the event of an arbitration, if First Beneficiary and Second Beneficiary cannot agree on a single disinterested arbitrator within ten (10) days after receipt of a written demand for arbitration by one Beneficiary to the other Beneficiary, then within ten (10) days thereafter each Beneficiary shall select an arbitrator to serve on a board of arbitration, and within ten (10) days of their selection, those two arbitrators shall select a third disinterested arbitrator to complete the board of arbitration. In the event that the two arbitrators chosen by the Beneficiaries are unable to agree upon a third arbitrator within ten (10) days of their selection, either Beneficiary may petition the presiding judge of the Superior Court of Maricopa County, Arizona, who shall appoint the third arbitrator. The arbitrators shall meet and reach a decision within thirty (30) days of the appointment of the third arbitrator, and the conclusion of the majority shall be binding. In the event a majority opinion cannot be reached, the conclusion of the third arbitrator shall be binding.

The arbitrators selected hereunder shall be certified public accountants for financial issues and attorneys at law for all other issues. The arbitrators shall be licensed to practice in the State of Arizona, with the attorneys at law to have an AV rating in the most recently published Martindale-Hubbell Law Directory and the certified public accounts to be from accounting firms of a regional or larger size. All of the arbitrators shall have at least 15 years of experience in representing clients in the area of real estate development.

The Beneficiaries to the arbitration shall have the right to offer evidence and testify at the hearings, to be represented by counsel and to cross examine witnesses, and the arbitrators may

consider facts and data which they may discover by their independent investigation and inquiry outside of such hearings. The expenses of the arbitration (exclusive of each Beneficiary's counsel and experts' fees) shall be borne equally by the Beneficiaries.

If the arbitration award is not satisfied within ten (10) days of the award, or in the case of a nonmonetary award if the award is not satisfied or a good faith effort to comply with the terms of the award is not commenced within thirty (30) days of the award, the prevailing Beneficiary may invoke the assistance of a court of competent jurisdiction to enforce the award. Upon such enforcement, the prevailing Beneficiary shall be entitled to a judgment for its costs and attorneys fees incurred in seeking the enforcement of the award.

## SECTION XX

Until this Trust Agreement is terminated, Second Beneficiary shall maintain in full force and effect a liability insurance policy in connection with the Spurlock Property, in which First Beneficiary and the Trustee shall be named as additional insureds. The insurance policy shall be for not less than $1,000,000 per occurrence and $2,000,000 in the aggregate for each year. The insurance policy shall be with a company having a A.M. Best rating of at least A-X. First Beneficiary and the Trustee shall be given a certificate of insurance from the insurance company, which shall provide for not less than ten (10) days written notice to First Beneficiary and the Trustee of the lapse or cancellation of the insurance policy.

## SECTION XXI

As compensation for its services under this Trust Agreement, the Trustee shall be entitled to receive its usual and customary Trust fees and charges in conformity with the fee schedule of the Trustee then in effect and as may be amended from time to time, without notice.

All fees charged by reason of the number of First Beneficiaries and subsequent transactions involving only the First Beneficial Interest shall be the obligation of First Beneficiary.

All fees charged by reason of the number of Second Beneficiaries and subsequent transactions involving only the Second Beneficial Interest shall be the obligation of Second Beneficiary.

NOTE: A reasonable charge will be made for extraordinary services rendered. To the extent that the Trustee is reasonably able to do so, all extraordinary services shall be first approved by the Beneficiary to whom the payment will be charged.

## SECTION XXII

As between First Beneficiary and Second Beneficiary, except as herein specifically provided to the contrary, it is agreed that all fees shall be payable by Second Beneficiary; provided, however,

190053-4                                        20

that the Trustee may look to any property or funds of Second Beneficiary in its hands for payment thereof. First Beneficiary shall pay for any increase in fees that are caused by the First Beneficiary being comprised of more than one individual or entity.

## SECTION XXIII

Each provision hereby granting a right or privilege to Second Beneficiary (including, without limiting the generality of the foregoing, the provisions permitting subdividing and improving of the Spurlock Property) and not expressly imposing an obligation on Second Beneficiary creates only a right or privilege in Second Beneficiary may or may not exercise, at Second Beneficiary's sole option; and Second Beneficiary has no obligation to exercise such right or privilege. Notice is hereby given that Second Beneficiary is not the agent of First Beneficiary for the purpose of subdividing or improving the Spurlock Property or for any other purpose.

## SECTION XXIV

Trustee shall not be obligated to warrant title to any property sold or conveyed by it except as against the acts of the Trustee only. The Trustee shall convey title pursuant to the provisions of the Trust in the manner and form required by Section 33-404(A) of the Arizona Revised Statutes, as amended, specifically providing the full disclosure of the names and addresses of all Beneficiaries.

## SECTION XXV

An applicable policy of title insurance of First American Title Insurance Company, in the regular form then in use shall be issued in connection with each transaction involving the Spurlock Property, if the nature of the transaction creates an insurable interest, or unless such issuance is specifically waived by the Trustee.

## SECTION XXVI

The accounting records of the Trustee shall at all reasonable times be open to the inspection of the interested Beneficiaries to this Trust Agreement. The Beneficiaries shall be entitled to monthly statements from the Trustee showing all the receipts and disbursements and charges made in connection with the Trust.

## SECTION XXVII

No advertising shall indicate the Trustee is the author thereof, and the Trustee shall not be liable for any statement or representation made therein.

## SECTION XXVIII

190053-4

No person dealing with the Trustee shall be obligated to ascertain whether or not the Trustee has exceeded its powers in any act it may perform or cause to be performed incident to or in connection with the management, control, sale, application, distribution, disposal or otherwise handling of the Trust Estate,

## SECTION XXIX

The Trust shall be exempt from the provisions and operation of the Uniform Principal and Income Act of Arizona.

## SECTION XXX

A.     Notwithstanding any provision to the contrary in this Trust Agreement, any amount that is to be  paid by a Beneficiary to the other Beneficiary or the Trustee that is due and payable but not paid shall bear interest at the rate of ten percent (10%) per annum from the date that the amount is due and payable until paid.

B.     All notices or communications under this Trust Agreement shall be in writing and shall be deemed to be given when personally delivered or two (2) days after mailing by certified mail, return receipt requested, postage pre-paid, to the addresses set forth in this Trust Agreement.

C.     This Trust Agreement shall be governed and construed under the laws and by the courts of the State of Arizona, unless there is a conflict between the laws of the State of Arizona and the United States, in which event, the laws of the United States shall control.  The prevailing party in any dispute, whether litigation or arbitration, shall be entitled to attorneys fees and costs, including any experts.

## SECTION XXXI

Whenever the context of this instrument so requires words used in the masculine gender include the feminine and neuter; the singular number includes the plural, and the plural the singular; the word person includes a corporation, company, partnership or association, or society as well as a natural person.  Every reference to any Beneficiary or to the Beneficiaries collectively shall be deemed to constitute a reference to all successors in interest or assigns of the Beneficiary referred to.

## SECTION XXXII

A.     The Trustee may resign at any time upon thirty (30) days written notice of its intention to do so mailed to all Beneficiaries and W.V.S.V. at their last address known to the Trustee.  If within thirty (30) days after notification to Beneficiaries a successor to the Trustee has not been appointed by mutual agreement to all Beneficiaries, the Trustee may commence an action for appropriate relief in a court of competent jurisdiction for the appointment of a successor trustee, or, at its option, the Trustee may convey the Trust Estate to Beneficiaries as their interests appear hereunder or take any

190053-4                                                22

other action as it may deem necessary or appropriate in the circumstances. Notwithstanding any such resignation, the Trustee shall continue to have a lien on all Spurlock Property constituting the Trust Estate, which lien shall be senior to the respective interests of the Beneficiaries or any assignee thereof, for its costs, expenses, legal representation, advances on behalf of any Beneficiary and for its reasonable compensation. Every successor trustee appointed hereunder shall become fully vested with all properties constituting the Trust Estate and with rights, powers, duties and obligations of the Trustee being succeeded.

B.      Second Beneficiary shall have the right at any time to substitute the Trustee with any title insurance company with a Phoenix, Arizona office that is ranked in the top five of title insurance companies as determined by industry standards.

**SECTION XXXIII**

The provisions of this instrument and the terms and conditions hereof and of this Trust Agreement shall be binding upon and inure to the benefit of the executors, administrators, legatees, devisees, heirs, successors and assigns of the Beneficiaries hereto. Upon payment in full to First Beneficiary of the Purchase Price, plus interest, and all other amounts due under this Trust Agreement, the restrictions set forth in this Trust Agreement with respect to the Spurlock Property shall terminate and no longer be of any force or effect.


_____          _____
**Michael E. Tiffany**                **Raymond M. Hunter**
**Attorney for First Beneficiary**    **Attorney for Second Beneficiary**

190053-4

other action as it may deem necessary or appropriate in the circumstances. Notwithstanding any such resignation, the Trustee shall continue to have a lien on all Spurlock Property constituting the Trust Estate, which lien shall be senior to the respective interests of the Beneficiaries or any assignee thereof, for its costs, expenses, legal representation, advances on behalf of any Beneficiary and for its reasonable compensation. Every successor trustee appointed hereunder shall become fully vested with all properties constituting the Trust Estate and with rights, powers, duties and obligations of the Trustee being succeeded.

B.       Second Beneficiary shall have the right at any time to substitute the Trustee with any title insurance company with a Phoenix, Arizona office that is ranked in the top five of title insurance companies as determined by industry standards.

## SECTION XXXIII

The provisions of this instrument and the terms and conditions hereof and of this Trust Agreement shall be binding upon and inure to the benefit of the executors, administrators, legatees, devisees, heirs, successors and assigns of the Beneficiaries hereto. Upon payment in full to First Beneficiary of the Purchase Price, plus interest, and all other amounts due under this Trust Agreement, the restrictions set forth in this Trust Agreement with respect to the Spurlock Property shall terminate and no longer be of any force or effect.


_____          _____
**Michael E. Tiffany**                                   **Raymond M. Hunter**
**Attorney for First Beneficiary**              **Attorney for Second Beneficiary**

190053-4

23

**FIRST BENEFICIARY:**

**Calvin-Crockett Cattle Co.**
**aka Calvin Crocket Cattle Company**


By:    C. Pat Spurlock and Nancy W. Spurlock
        Trust Dated March 1, 1989, Partner


By:      
        Nancy W. Spurlock, Co-Trustee


**Michael E. Tiffany**

190053-4

24

**David Spurlock & Sons General Partnership**

By: _____
      D. Glen Spurlock, General Partner

**Spurlock Land Investors I Limited Partnership**

By:    Spurlock Land, LLC
       an Arizona limited liability company
       General Partner

      By: _____
          D. Glen Spurlock, Manager

**Spurlock Land Investors II Limited Partnership**

By:    Spurlock Land, LLC
       an Arizona limited liability company
       General Partner

      By: _____
          D. Glen Spurlock, Manager

**SECOND BENEFICIARY:**

**10K, L.L.C.**

By:    Phoenix Holdings II, L.L.C.
        an Arizona limited liability company
        Manager

        By:    _____
             Brent Hickey, Manager

Executed by the Trustee this 16th day of July, 2003.

        **First American Title Insurance Company**

        By:    _____
             Trust Officer

190053-4

26

STATE OF ARIZONA )
                          ) ss.
County of Maricopa )

    The foregoing instrument was acknowledged before me this _10th_ day of July, 2003, by **Nancy W. Spurlock**, in her capacity as Co-Trustee of the C. Pat Spurlock and Nancy W. Spurlock Trust Dated March 1, 1989, Partner of **Calvin-Crockett Cattle Co. aka Calvin Crocket Cattle Company**, an Arizona general partnership, on behalf of said partnership.

_Deborah Barbaria_
Notary Public


STATE OF ARIZONA )
                          ) ss.
County of Maricopa )

    The foregoing instrument was acknowledged before me this _10th_ day of July, 2003, by **Michael E. Tiffany**, in his individual capacity.

_Deborah Barbaria_
Notary Public


STATE OF ARIZONA )
                          ) ss.
County of Maricopa )

    The foregoing instrument was acknowledged before me this _10th_ day of July, 2003, by **D. Glen Spurlock**, in his capacity as General Partner of **David Spurlock & Sons General Partnership**, an Arizona general partnership, on behalf of said partnership.

_Deborah Barbaria_
Notary Public

190053-4

27

STATE OF ARIZONA  )
        ) ss.
County of Maricopa  )

  The foregoing instrument was acknowledged before me this _10th_ day of July, 2003, by **D. Glen Spurlock**, in his capacity as Manager of Spurlock Land, LLC, an Arizona limited liability company, the General Partner of **Spurlock Land Investors I Limited Partnership**, an Arizona limited partnership, on behalf of said partnership.

            _Deborah Barbaria_
            Notary Public

> OFFICIAL SEAL
> **DEBORAH BARBARIA**
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires March 13, 2005


STATE OF ARIZONA  )
        ) ss.
County of Maricopa  )

  The foregoing instrument was acknowledged before me this _10th_ day of _July_, 2003, by **D. Glen Spurlock**, in his capacity as Manager of Spurlock Land, LLC, an Arizona limited liability company, the General Partner of **Spurlock Land Investors II Limited Partnership**, an Arizona limited partnership, on behalf of said partnership.

> OFFICIAL SEAL
> **DEBORAH BARBARIA**
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires March 13, 2005

            _Deborah Barbaria_
            Notary Public


STATE OF ARIZONA  )
        ) ss.
County of Maricopa  )

  The foregoing instrument was acknowledged before me this ____ day of _____, 2003, by **Brent Hickey**, in his capacity as Manager of Phoenix Holdings II, L.L.C., an Arizona limited liability company, the Manager of **10K, L.L.C.**, an Arizona limited liability company, on behalf of said company.

            _____
            Notary Public

190053-4

28

STATE OF ARIZONA     )
                        ) ss.
County of Maricopa     )

      The foregoing instrument was acknowledged before me this _____ day of July, 2003, by **D. Glen Spurlock**, in his capacity as Manager of Spurlock Land, LLC, an Arizona limited liability company, the General Partner of **Spurlock Land Investors I Limited Partnership**, an Arizona limited partnership, on behalf of said partnership.

_____
Notary Public

STATE OF ARIZONA     )
                        ) ss.
County of Maricopa     )

      The foregoing instrument was acknowledged before me this _____ day of _____, 2003, by **D. Glen Spurlock**, in his capacity as Manager of Spurlock Land, an Arizona limited liability company, the General Partner of **Spurlock Land Investors II Limited Partnership**, an Arizona limited partnership, on behalf of said partnership.

_____
Notary Public

STATE OF ARIZONA     )
                        ) ss.
County of Maricopa     )

      The foregoing instrument was acknowledged before me this _16th_ day of _July_, 2003, by **Brent Hickey**, in his capacity as Manager of Phoenix Holdings II, L.L.C., an Arizona limited liability company, the Manager of **10K, L.L.C.**, an Arizona limited liability company, on behalf of said company.

OFFICIAL SEAL
PENNY S. SMITH
NOTARY PUBLIC - STATE OF ARIZONA
MARICOPA COUNTY
My Commission Expires Aug 24, 2005

_Penny S. Smith_
Notary Public

190053-4

28

STATE OF ARIZONA    )
                    ) ss.
County of Maricopa  )

The foregoing instrument was acknowledged before me this ____ day of July, 2003 by
_____, in his capacity as _____ of **First American Title
Insurance Company**, a California corporation, on behalf of said corporation.

_____
Notary Public

# EXHIBIT A

## (Hypothetical Example of Release Adjustment)

|  | | Amount |
|---|---|---|
| A. | Spurlock Down Payment | $4,500,000 |
|  | 10K Note | $6,527,908 |
|  | Total Down Payment and Assumed Note (Release Credit) | $11,027,908 |

B.    Release Credit of $11,027,908 divided by $5,000 = 2,205 acres.

C.    Assuming W.V.S.V. uses the Release Credit to release 1,000 acres of Spurlock Property and 1,205.58 acres of 10K Property, the release adjustment will be calculated as follows:

| | |
|---|---|
| Value of Spurlock Property ($5,000 x 1,000 acres) | $5,000,000 |
| Spurlock Down Payment | $4,500,000 |
| Difference | $ 500,000 |

D.    The difference must be paid by 10K to Spurlock, plus 7% per annum from the date of the release of the Spurlock Property valued in excess of the Spurlock Down Payment. The portion of the Release Credit for Spurlock Property is 900 acres ($4,500,000 ÷ 5,000 = 900). Assuming the first release is for 1,000 acres of Spurlock Property, the interest accrual will be calculated as follows:

| | |
|---|---|
| Spurlock Property Release | 1,000 acres |
| Part of Release Credit for Spurlock Property | 900 acres |
| Excess Release | 100 acres |

Interest will accrue at the rate of 7% per annum against $500,000 (100 acres x $5,000) from the date of the release. The above calculation will be applied to each subsequent release until the Release Credit is exhausted.

E.    The $500,000 for the excess release of the Spurlock Property plus interest will be secured by the interest of 10K in the Junior Trust Agreement, and the $500,000 will be paid to Spurlock as provided in this Agreement out of distributions from the Junior Trust Agreement until the unpaid balance of the $500,000 plus accrued interest are paid in full.

F.    The above calculation will be used, and 10K will be secured and paid out of the interest of Spurlock in the Senior Trust, if the Release Credit is used to release more than 1,305 acres of 10K Property ($6,527,908 ÷ $5,000 = 1,305).

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document       Page 43 of 73

**EXHIBIT B**

**(Disclosure Letter)**

_____, 200__

_____
_____
_____
_____

Dear _____:

    10K, L.L.C. ("Buyer") has entered into an Amended and Restated Agreement of Purchase and Sale ("Agreement") with Spurlock Land, LLC, Spurlock Land Investors I Limited Partnership and Spurlock Land Investors II Limited Partnership (collectively "Seller") dated June 4, 2002 to purchase approximately 3,244 acres of land located in Buckeye, Arizona as depicted in the attached Exhibit A. Buyer and Seller have agreed to keep the provisions of the Agreement and the documents and information delivered in connection with the Agreement confidential. The reason for this is that Buyer and Seller may suffer substantial and irreparable harm if there is an unauthorized disclosure to third parties without the prior written consent of Seller and Buyer.

    The above provision does not prohibit disclosure to you as long as you agree to not make any further disclosure. For this reason, please sign this letter where provided below and return it to me for my records.

    Thank you for your assistance.

Sincerely,

10K, L.L.C.

By: _____

Its: _____

    The above restriction regarding disclosure is hereby accepted this ____ day of _____, 200__.

_____

By: _____

Its: _____

190053-4

31



Exhibit A
Property Description Plan

10K REAL PROPERTY

SPURLOCK REAL PROPERTY

10K REAL PROPERTY

# EXHIBIT "B"

# LOAN AGREEMENT

BY THIS LOAN AGREEMENT made and entered into as of the ___ day of July, 2015, between WVSV Holdings, L.L.C., whose mailing address is 1121 W. Warner Road, Suite 109, Tempe, Arizona (hereinafter called "Borrower"), and Pacific Coach, Inc., an Arizona corporation, whose address is 2201 E. Camelback Road, Suite 650, Phoenix, Arizona 85016, and its successors and assigns (hereinafter called "Lender"), for and in consideration of the recitals and mutual promises contained herein, confirm and agree as follows:

## SECTION 1.  RECITALS.

1.1     Borrower has applied to Lender for a loan in the aggregate principal amount of Four Million Six Hundred Fifty Eight Thousand Two Hundred Three Dollars and 20/100 ($4,658,203.20) in order to pay off and refinance the outstanding debt described in section V of First American Title Trust No. 8435 dated July 16, 2003 ("Trust 8435"), and for paying all costs and fees relating hereto and other purposes as approved by Lender.

1.2     Lender has agreed to make a term loan subject to the terms and conditions contained herein.

## SECTION 2.  LOAN COMMITMENT AND LOAN TERMS.

2.1     Subject to the conditions herein set forth, Lender agrees to loan to or for the benefit of the Borrower, and Borrower agrees to draw upon and borrow, in the manner and upon the terms and conditions herein expressed, a principal amount aggregating not more than the sum of Four Million Six Hundred Fifty Eight Thousand Two Hundred Three Dollars and 20/100 ($4,658,203.20) (the "Loan").

2.2     In addition to this Loan Agreement, the Loan shall be evidenced by that certain First Amendment to Trust Agreement entered into simultaneously herewith amending Trust 8435 in the form attached hereto as Exhibit A and by such other Security Documents described in section 4 below.

2.3     Subject to the conditions contained herein, Borrower shall have the privilege to prepay the Principal Amount of the Loan, or any portion thereof, at any time, without premium or penalty subject to the terms of this Agreement.  In the event Borrower elects such prepayment privilege, Lender shall be provided with three (3) business days prior written notice of such intent to prepay.

2.4     Intentionally Deleted.

2.5     The Loan shall be repaid as follows:

        (a)     Interest shall be paid on all unpaid principal at the rate of nine and

one-half percent (9.5%) per annum which payment shall be made on a monthly basis commencing on the ___ day of August, 2015 and continuing on the same day of each month thereafter until the Maturity Date at which time all accrued but unpaid interest shall be due and payable. All interest referred to herein shall be calculated on the basis of a three hundred sixty-five (365) day year.

(b)     Intentionally Deleted.

(c)     If not sooner paid the Loan shall mature and be due and payable on July ___, 2016 (the "Maturity Date").

(d)     All payments shall be made by Borrower to lender at Lender's home office, which is located at 2201 E. Camelback Road, Suite 650, Phoenix, Arizona 85016, or at such other place or places as Lender may designate in writing from time to time. All payments, including any permitted prepayments, shall be applied first to interest and then to principal. In order for same day credit, any payment made by Borrower must be received by Lender prior to 11:00 a.m., Phoenix, Arizona time. Any payment not received prior to 11:00 a.m. by Lender will be credited as if it was received on the following business day.

(e)     In the event that any payment of interest or principal shall not be made on the due date (including without limitation the Maturity Date) and such payment remains outstanding five (5) days after the due date, Borrower agrees to pay a late charge equal to Two Thousand Dollars ($2,000.00) per day for each day the payment is so overdue beginning from the payment due date through and including the day the delinquent payment is made. Such late charge represents the reasonable estimate of Lender of a fair average compensation for the loss that may be sustained by lender due to the failure of Borrower to make timely payments.

(f)     If any sum is not paid on the due date thereof, then (in addition to the late charge as stated above) the interest rate on the unpaid principal shall be increased to eighteen percent (18%) per annum from the date of the last payment and such rate shall continue until all payments have been made current.

(g)     All delinquent payments together with the late charge, Default Interest  and any other amount due relating thereto, shall be paid to Lender in certified funds.

(h)     All payments shall be in lawful money of the United States of America or in such other form which is acceptable to Lender. Lender's acceptance of payment in any form other than lawful money of the United States of America for any partial payment required or permitted under the provisions of this Agreement shall not be a waiver of the requirement that any future payments be made in lawful money of the United States of America.

(i)     Except as otherwise expressly provided in this Loan Agreement, each installment and other payment hereunder shall be applied: first, to interest made

2

on any advance by Lender; second, to the repayment of any advance or costs incurred by Lender; third, to the payment of accrued interest due on the unpaid principal balance; and fourth the remainder of each installment shall be applied to the reduction of unpaid principal.

(j)     Borrower agrees to advance any sums required to preserve and protect the security in the event third parties responsible for such preservation and protection fail to make such payment, including but not by way of limitation, all sums due for taxes, and insurance premiums.  In the event Borrower fails to make such advances, Lender may, but shall not have the obligation to make such advances and such sums including interest at the Default Interest rate from the date of each advance and attorneys' fees shall be paid to Lender in addition to and at the same time as the next installment due under the Loan.

2.6     The parties appoint Lender as Collection Agent and Borrower agrees to pay all of the reasonable costs of collection as may be established by Collection Agent from time to time.

2.7     Borrower shall pay for or reimburse Lender for all reasonable costs and fees incurred by lender in connection with any request by Borrower to renegotiate the Loan, for Lender to consider and approve Borrower's request, document changes or modifications to the Loan, or to preserve the security interest of Lender and any reasonable administration costs arising from Borrower's request or actions, interpretation and enforcement of the Loan and Security Documents.

## SECTION 3.  <u>FEES</u>.

3.1     Borrower shall remit to Lender the amount of Forty Six Thousand One Hundred Twenty Dollars ($46,120.00) which amount is included in the principal amount of the Loan.

3.2     Borrower shall pay all title insurance premiums and closing costs incident to the Loan including Lender's legal fees of _____ Dollars ($_____.00).  If Lender is prepared to fund the Loan and closing does not occur as a result of Borrower's acts, or for any reason other than the failure of Lender to fund the Loan, Borrower shall be obligated to pay Lender upon demand the balance of the above fees.

3.3     Prior to or after an "Event of Default" (defined below), it may be necessary for Lender or its agent, to perform loan administration services (as determined in the sole and exclusive discretion of Lender or the authorized agent of Lender), relating to the orderly administration of the Loan.  Borrower shall reimburse Lender and/or its agent for any and all costs and expenses, including a reasonable loan administration fee incurred in connection therewith.

3

**SECTION 4.  SECURITY.**

4.1    Borrower shall cause the Loan and Borrower's obligations under this Agreement to be secured by the following:

(a)    That certain First Amendment to Trust Agreement attached hereto as Exhibit A.

(b)    Second Amendment to Collateral Assignment of Beneficial Interest in Trust and Security Agreement regarding First American Trust 8436 in the form attached hereto as Exhibit B.

(c)    Such other documents as are requested by Lender.

4.2   All of the documents required by Lender to grant and perfect the liens and security interests required by this Section 4 shall be in form satisfactory to Lender and may be referred to herein as the "Security Documents."  "Security Documents" shall further include First American Title Trust Agreement No. 8435 as amended by that certain First Amendment to Trust Agreement attached hereto as Exhibit A and shall further include First American Title Trust No. 8436 to the extent that the Lender holds and/or acquires an interest therein pursuant to the Collateral Assignment of Beneficial Interest in Trust and Security Agreement as amended in accordance with Exhibit B attached hereto.

4.3    All funds held by Lender in any impound account or otherwise for the benefit of the Borrower are hereby assigned to Lender as additional security for the Loan and all other indebtedness of Borrower arising hereunder.

**SECTION 5.  CONDITIONS PRECEDENT FOR CLOSING.**

The obligation of Lender to make the Loan is subject to the following express conditions precedent, all of which shall have been satisfied prior to the advancement of the Loan proceeds:

5.1    Borrower shall have executed (or obtained the execution or issuing of) and delivered to Lender the following documents, all in form satisfactory to Lender:

(a)    The Security Documents;

(b)    Any and all other Loan documents requested by Lender in connection with the Loan.

5.2    Lender shall have received the legal fees and closing costs required in Section 3 hereof.

4

5.3    Borrower, at its expense, shall have obtained and delivered to Lender the following items, all of which shall be in form and content satisfactory to Lender and shall be subject to approval in writing by Lender:

(a)    An ALTA extended coverage title insurance policy in a form and content with such endorsements as Lender may reasonably require, issued by a title insurance company satisfactory to Lender insuring Lender's position as first beneficiary under the First Amendment to Trust Agreement (First American Trust 8435) and Lender's position as assignee under the Second Amendment to Collateral Assignment of Beneficial Interest and Trust and Security Agreement (First American Trust 8436) in the form and substance satisfactory to Lender in an amount not less than Four Million Six Hundred Fifty Eight Thousand Two Hundred Three Dollars and 20/100 ($4,658,203.20)

5.4    All representations and warranties by Borrower shall remain true and correct and all agreements that Borrower is to have performed or complied with by the date hereof shall have been performed or complied with.

5.5    No Event of Default exists and no event or condition exists that after notice or lapse of time, or both, would constitute an Event of Default.

**SECTION 6.  <u>REPRESENTATIONS AND WARRANTIES</u>.**

6.1    The recitals and statements of intent appearing in this Agreement are true and correct.

6.2    Borrower has full power and authority to own its properties and assets and to carry on its business as now being conducted.

6.3    Borrower is fully authorized and permitted to enter into this Agreement, to execute any and all documentation required herein, to borrow the amounts contemplated herein upon the terms set forth herein and to perform the terms of this Agreement, none of which conflicts with any provision of law or regulation applicable to Borrower.  This Agreement and the First Amendment to Trust Agreement attached hereto as Exhibit A are valid and binding legal obligations of Borrower and each is enforceable in accordance with its terms.

6.4    The liens, security interests and assignments created by the Security Documents will, when granted, be valid, effective, properly perfected and enforceable liens, security interests and assignments.

6.5    The execution, delivery and performance by Borrower of this Agreement, the Security Documents and all other documents and instruments relating to the Loan will not result in any breach of the terms or conditions of, or constitute a default under, any agreement or instrument under which Borrower is a party or it obligated.  Borrower

is not in default in the performance or observance of any obligations, covenants or conditions of any such agreement or instrument.

6.6    The execution, delivery and performance by Borrower of this Agreement, the Security Documents and all other documents and instruments relating to the Loan were approved by the U.S. Bankruptcy Court, District of Arizona in Case No. 2:12-bk-10598-RJH under that certain Amended Order Confirming Creditor's First Plan of Reorganization dated August, 2013 filed as Document No. 373 on March 13, 2014 and entered on March 14, 2014.  No further orders of the Bankruptcy Court and/or any other court are required in order for Borrower to consummate this Agreement.  Borrower shall provide Lender with an opinion of counsel as to the representation and warranty contained in this paragraph 6.6.

6.7    No actions, suits or proceedings are pending or threatened against Borrower that might materially and adversely affect the repayment of the Loan, the performance by Borrower under this Agreement or the financial condition, business or operations of Borrower.

6.8    The Security Documents are valid and enforceable according to their terms.

6.9    All financial statements, profit and loss statements, statements as to ownership and other statements or reports previously or hereafter given to Lender by or on behalf of Borrower are and shall be true, complete in all material respects and correct as of the date thereof.  There has been no material adverse change in the financial condition or the results of the operation of Borrower since the latest financial statements of Borrower given to Lender.

6.10    Borrower has filed all federal, state and local tax returns and has paid all of its current obligations before delinquent, including all federal, state and local taxes and all other payments required under federal, state or local law.

6.11    All information furnished to Lender by Borrower or Borrower's agents is true, complete and correct in all material respects and no information was withheld or omitted by Borrower or Borrower's agents which, if made known to Lender would have caused Lender to not make the Loan.

## SECTION 7.  **<u>AFFIRMATIVE COVENANTS</u>**.

So long as Lender has any commitment to lend to Borrower hereunder and until the Loan and all other indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged:

7.1    Borrower shall promptly pay for all labor, materials, equipment and fixtures used in connection with the construction of any improvements and all other costs

6

relating to any improvements except that Borrower may contest in good faith the validity or amount thereof provided that Borrower shall have furnished to Lender a cash deposit or other appropriate security in an amount and form satisfactory to Lender to protect Lender against the creation of any lien on, or any sale or forfeiture of, any property encumbered directly or indirectly by the Security Documents.  Upon the final determination of Borrower's contest, Borrower shall promptly pay all sums, if any, determined to be due.  Any deposit or security provided by Borrower shall be returned to Borrower upon the final determination of Borrower's contest and the payment by Borrower of the sums, if any, determined to be due.

7.2     No materials, equipment, fixtures or any other part of the improvements, or articles of personal property placed in the improvements, shall be purchased or installed under any security agreement or other arrangements wherein the Seller of such items reserves or purports to reserve the right to remove or to repossess any such items or to consider them personal property after their incorporation into the improvements, except for any purchase money lien or security interest or any lessor's interest in any of the personal property.

7.3     Borrower shall maintain in full force and effect at all times all insurance coverages required to be provided herein.

7.4     Borrower shall pay all bills when due, keep books and records in accordance with generally accepted accounting principles, consistently applied, and shall deliver to Lender such financial and profit and loss statements (in form satisfactory to Lender) as Lender may request from time to time and will permit a representative on behalf of Lender to examine and audit the books of its business at a mutually agreeable time.  Borrower shall immediately inform Lender of any litigation involving Borrower or the collateral that is the subject of the Security Documents.

7.5     Borrower shall make all payments of interest and principal on the Loan and shall keep and comply with all covenants, terms and provisions of the Security Documents.

7.6     Borrower shall execute and deliver to Lender such other instruments and documents and do such other acts as Lender may reasonably require in connection with this Loan.

## SECTION 8.  <u>NEGATIVE COVENANTS.</u>

So long as Lender has any commitment to lend to Borrower hereunder and until the Loan and all other indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged, without the prior written consent of Lender:

8.1     Borrower shall not, without Lender's consent, (a) assign, transfer or convey any of its right, title and interest in any property whether real or personal directly

Case 2:15-ap-00595-MCW    Doc 1    Filed 07/10/15    Entered 07/10/15 10:22:46    Desc
Main Document      Page 53 of 73

or indirectly encumbered by the Security Documents, (b) create or suffer to be created any mortgage, pledge, security interest, encumbrance or other lien on any property directly or indirectly encumbered by the Security Documents, including, without limitation, a subordinate lien or encumbrance, or (c) create or suffer to be created any mortgage, pledge, security interest, encumbrance or other lien on any other property or assets which it now owns or hereafter acquires except in consideration of the contemporaneous receipt by it of benefits equal or greater in value to the lien created.

## SECTION 9.  <u>INSPECTION BY LENDER</u>.

9.1     Lender shall have the right, but not the obligation, to enter at any reasonable times upon the property that is the subject of the Security Documents and improvements to determine if Borrower is maintaining and operating said property in conformity with the Security Documents and all other requirements hereof and to examine and make copies and extracts of any books, records, accounting data and other documents, including without limitation all permits, licenses, consents and approvals of governmental authorities having jurisdiction over Borrower.

9.2     Lender shall have no duty to inspect any improvements or to inspect any books and records; any inspection by Lender shall be for the sole purpose of protecting Lender's security and preserving Lender's rights hereunder.

## SECTION 10.  <u>WAIVER</u>.

10.1    Borrower waives presentment, demand, protest and notices of protest, nonpayment, partial payment and all other notices and formalities except as expressly called for in this Agreement.  Borrower consents to and waives notice of: (i) the granting of indulgences or extensions of time of payment; (ii) the taking or releasing of security, and (iii) the addition or release of persons who may be or become primarily or secondarily liable for the Loan or any other indebtedness arising in connection with the Loan, or any part thereof, and all in such manner and at such time as Lender may deem advisable.

10.2    No delay or omission by Lender in exercising any right, power or remedy hereunder, and no indulgence given to Borrower, with respect to any condition set forth herein, shall impair any right power or remedy of Lender under this Agreement, or be construed as a waiver by Lender of, or acquiescence in, any Event of Default.  Likewise, no such delay, omission or indulgence by Lender shall be construed as a variation or waiver of any of the terms or provisions of this Agreement.  Any actual waiver by Lender of any Event of Default shall not be a waiver of any other prior or subsequent Event of Default or of the same Event of Default.

## SECTION 11.  <u>DEFAULT</u>.

11.1    The occurrence of any of the following events or conditions shall constitute an "Event of Default" under this Agreement:

8

(a)     Any failure to pay any principal or interest under Trust 8435 as amended by the First Amendment to Trust Agreement attached hereto as Exhibit A as and when the same shall become due and payable and such failure continues for five (5) days thereafter, this Agreement or any Security Document as and when the same shall become due and payable, which failure continues for five (5) days thereafter;

(b)     Any failure or neglect to perform or observe any of the terms, provisions, or covenants of this Agreement or any Security Document or any other document or instrument executed or delivered in connection with the Loan and such failure or neglect either cannot be remedied or, if it can be remedied, it continues unremedied for a period of thirty (30) days after written notice thereof to Borrower;

(c)     Any warranty, representation or statement contained in this Agreement or in any Security Document or any other document or instrument executed or delivered in connection with the Loan, or made or furnished to Lender by or on behalf of Borrower, that shall prove to have been materially false when made or furnished;

(d)     The filing by Borrower (or against Borrower or which is not dismissed within forty-four (44) days after the filing thereof) of any proceeding under the federal bankruptcy laws now or hereafter existing or any other similar statute now or hereafter in effect; the entry of an order for relief under such laws with respect to Borrower; or the appointment of a receiver, trustee, custodian or conservator of all or any part of the assets of Borrower;

(e)     The insolvency of Borrower; or the execution by Borrower of an assignment for the benefit of creditors; or the convening by Borrower of a meeting of its creditors, or any class thereof, for purposes of effecting a moratorium upon or extension or composition of its debts; or the failure of Borrower to pay its debts as they mature; or if Borrower is generally not paying its debts as they mature;

(f)     The admission in writing by Borrower that it is unable to pay its debts as they mature or that it is generally not paying its debts as they mature;

(g)     The liquidation, termination or dissolution of Borrower, if a limited liability company, corporation, partnership or joint venture if Lender is not reasonably reassured of timely payment and performance hereunder and all Loan Documents;

(h)     Any attachment, garnishment, levy or execution upon, or judicial seizure of, any portion of any collateral or security for the Loan which may impair the position of Lender;

(i)     The occurrence of any Event of Default under any of the Security Documents or any other document or instrument executed or delivered in connection with the Loan;

(j)     The occurrence of any Event of Default under any document or instrument given by Borrower in connection with any other indebtedness of Borrower (or any entity or person related to the Borrower) to Lender.

11.2     Upon the occurrence of any Event of Default and at any time thereafter while such Event of Default is continuing, Lender may do one or more of the following:

(a)     Exercise each and every right and/or remedy which it elects to exercise under First American Trust No. 8435 in its capacity as First Beneficiary;

(b)     Exercise each and every right and/or remedy as the Assignee under that certain Collateral Assignment of Beneficial Interest and Trust and Security Agreement with respect to First American Trust No. 8436 as amended by Exhibit B attached hereto;

(c)     Proceed to protect and enforce its rights and remedies under this Agreement and all Security Documents;

(d)     Apply any funds remaining in any impound account to the Loan in any manner determined by Lender; and

(e)     Avail itself of any other relief to which Lender may be legally or equitably entitled.

11.3     Borrower shall pay all costs and expenses, including without limitation costs of title searches and title policy commitments, court costs and reasonable attorneys' fees, incurred in enforcing payment and performance of the Loan and the other indebtedness and obligation of Borrower hereunder or in exercising the rights and remedies of Lender hereunder.  Such court costs and attorneys' fees shall be set by the court and not by jury, shall be included in any judgment obtained by Lender and shall be secured by the Security Documents.

## SECTION 12.  ACTION UPON AGREEMENT.

12.1     This Agreement is made for the sole protection and benefit of the parties hereto and no other person or organization shall have any right of action hereon.

12.2     This Agreement when integrated with the Security Documents, embodies the entire Agreement of the parties with regard to said subject matter hereof.  There are no representations, promises, warranties, understandings or agreements expressed or implied, oral or otherwise, in relation thereto, except those expressly referred to or set forth herein.  Borrower acknowledges that the execution and delivery of this Agreement is its free and voluntary act and deed, and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings or agreements made by Lender, its agents, officers, employees or representatives.

12.3    No promise, representation, warranty or agreement made subsequent to the execution and delivery of this Agreement by either party hereto, and no revocation, partial or otherwise, or change, amendment or addition to, or alteration or modification of, this Agreement shall be valid unless the same shall be in writing signed by all parties hereto.

12.4    Lender and Borrower each have separate and independent rights and obligations under this Agreement.  Nothing contained herein shall be construed as creating, forming or constituting any partnership, joint venture, merger or consolidation of Borrower and Lender for any purpose or in any respect.

## SECTION 13.  <u>GENERAL</u>.

13.1    This Agreement shall survive the making of the Loan and shall continue so long as any part of the Loan, or any extension or renewal thereof, remains outstanding.

13.2    All rights, powers and remedies granted Lender herein, or otherwise available to Lender, are for the sole benefit and protection of Lender, and Lender may exercise any such right, power or remedy at its option and in its sole and absolute discretion without any obligation to do so.  In addition, if, under the terms hereof, Lender is given two or more alternative courses of action, Lender may elect any alternative or combination of alternatives, at its option and in its sole and absolute discretion.  All monies advanced by Lender under the terms hereof and all amounts paid, suffered or incurred by Lender in exercising any authority granted herein, including reasonable attorneys' fees, shall be secured by the Security Documents, shall bear interest at the highest rate payable on the Loan until paid, and shall be due and payable by Borrower to lender immediately without demand.

13.3    Borrower shall indemnify and hold Lender harmless from and against all claims, costs, expenses, actions, suits, proceedings, losses, damages and liabilities of any kind whatsoever, including but not limited to attorneys' fees and expenses, arising out of any matter relating, directly or indirectly, to the Loan, to the ownership, development, construction, or sale of the improvements, whether resulting from internal disputes of the Borrower, disputes between the Borrower and any guarantor, or whether involving other third persons or entities, or out of any other matter whatsoever related to this Agreement, the Security Documents, or any property directly or indirectly encumbered thereby, but excluding any claim or liability which arises as the direct result of the gross negligence or willful misconduct of Lender.  This indemnity provision shall continue in full force and effect and shall survive not only the making of the Loan and all advances, but shall also survive the repayment of the Loan and the performance of all the Borrower's other obligations hereunder.

13.4    If one or more of the provisions of this Loan Agreement shall be deemed to be severed from the Loan Agreement, the validity, legality and enforceability of the remaining provisions contained herein shall not, in any way be affected or impaired thereby.  Without limiting the generality of the foregoing, any provisions herein to the

11

contrary notwithstanding, in no event shall Lender be entitled to receive or collect, nor shall amounts received hereunder be credited so that Lender shall be paid, as interest, a sum greater than the maximum amount permitted by law. If any construction of this Loan Agreement would allow Lender the right to ask for, demand or receive any greater sum as interest, as, for example, a mistake in calculation or wording, then this clause shall override and control, and proper adjustment shall automatically be made accordingly.

13.5    In case any party hereto shall institute any suit against any other party for violation of any of the covenants or conditions of this Loan Agreement or should intervene in any action or proceeding wherein any other party is a party, in order to enforce or protect any interest or rights hereunder or proceed in any bankruptcy action to enforce or protect any interest or rights hereunder, the party prevailing in any such action or proceeding shall receive from the party reasonable attorneys' fees, to be fixed by the Court in such action.

13.6    This Loan Agreement may not be amended, modified or changed, nor shall any waiver of any provisions hereof be effective, except only by an instrument in writing and signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought.

13.7    Should this Loan Agreement be signed by more than one party, the singular shall include the plural and all the obligations herein contained shall be the joint and several obligations of each of the undersigned.

13.8    If Borrower consists of more than one person or entity their liability shall be joint and several. This Agreement shall apply to the parties hereto according to the context hereof and without regard to the number or gender or words or expressions used herein.

13.9    Time is expressly made of the essence of this Agreement.

13.10  **Notice**. All notices or other communications required or permitted to be given or delivered under this Agreement shall be in writing and may be hand delivered, deposited in the United States Mail, postage prepaid or forwarded by facsimile transmission or e-mail with the original to follow by United States Mail addressed to said party or parties at the addresses shown below, or to such other address as Borrower or Lender may designate by giving notice in the foregoing manner. Any notice hand-delivered or sent by facsimile shall be deemed effective when received and any notice sent United States Mail shall be deemed effective two (2) days following the date of mailing.

If intended for Borrower:

WVSV Holdings, L.L.C.
1121 W. Warner Road, Suite 109

Tempe, Arizona
>Facsimile telephone number:  480 893-1604
>E-mail: laj@wholdings.com

With a copy to:

Lawrence S. Rollin
Udal Law Firm, LLP
4801 E. Broadway Blvd., Suite 400
Tucson, Arizona 85711
>Facsimile telephone number:  520 623-4353
>E-mail: lrollin@udalllaw.com

If intended for Lender and mailed:

Pacific Coach, Inc.
2201 East Camelback Road, Suite 650
Phoenix, Arizona 85016
>Facsimile telephone number: 602-248-0884
>E-mail:  Andrew@levineinvestments.com

With a copy to:

Andrew Abraham, Esq.
Burch & Cracchiolo, P.A.
702 East Osborn Road, Suite 200
Phoenix, Arizona 85014
>Facsimile telephone number: 602-343-7917
>E-mail:  aabraham@bcattorneys.com

13.11  Borrower shall pay all costs and expenses arising from the preparation of this Agreement and the closing of the Loan, including but not limited to title insurance premiums, other title company charges, recording fees, Lender's attorneys' fees, and any intangible or recording taxes and any other charges that may be imposed on Lender as a result of this transaction.

13.12  This Agreement shall be governed by and construed according to the laws of the State of Arizona.

13.13  This Agreement shall, except as herein otherwise provided, be binding upon and insure to the benefit of the successors and assigns of the parties hereto.

13.14  The headings or captions of sections/paragraphs in this Agreement are for convenience and reference only and in no way define, limit or describe the scope or intent of this Agreement or the provisions of such sections/paragraphs.

13.15  Lender, at any time, shall have the right to sell participation interests in the Loan and in any documents and instruments executed in connection herewith.  Lender

13

is authorized to furnish to any participant or prospective participant any information or document that Lender may have or obtain regarding the Loan, Borrower or any guarantor of the Loan.

*SIGNATURE PAGE FOLLOWS*

14

**IN WITNESS WHEREOF**, the presents have been executed as of the day and year set forth above.

**BORROWER:**

WVSV Holdings, L.L.C., an Arizona limited liability company

By:  West Valley Ventures, LLC its Manager

By:  _____
Name: _____
Title: _____


State of ARIZONA   )
                   )
County of Maricopa )

On this, the _____ day of July 2015, before me the undersigned Notary Public, personally appeared _____, the _____ of West Valley Ventures, LLC, as Manager of WVSV Holdings, L.L.C., an Arizona limited liability company, who acknowledged that he executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.

In witness whereof, I have hereunto set my hand and official seal.


_____
Notary Public

15

**LENDER:**

PACIFIC COACH, INC.,
an Arizona corporation


By: _____
Its: _____




STATE OF ARIZONA     )
                           ) ss.
County of Maricopa      )

     On this, the _____ day of July, 2015, before me the undersigned Notary Public, personally appeared _____ , the _____ of Pacific Coach, Inc., who acknowledged that he executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.

     In witness whereof, I have hereunto set my hand and official seal.


_____
Notary Public

16

**EXHIBIT "A"**

First Amendment to First American Trust Agreement 8435

**EXHIBIT "B"**

Second Amendment to Collateral Assignment of Beneficial Interest in Trust and Security
Agreement regarding First American Trust 8436

# EXHIBIT "C"

# FIRST AMENDMENT TO TRUST AGREEMENT

This First Amendment to Trust Agreement (this "Amendment") is made and entered into this __ day of July, 2015 by and between FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation (redomesticated from California effective July 1, 2014), as Trustee under Trust No. 8435, and not personally ("Trustee"), PACIFIC COACH, INC., an Arizona corporation ("First Beneficiary") 10K, L.L.C., an Arizona limited liability company ("Second Beneficiary"), and WVSV HOLDINGS, LLC, an Arizona limited liability company ("WVSV").

## RECITALS

A. Trustee, First Beneficiary, and Second Beneficiary are current parties to that certain Trust Agreement dated as of July 16, 2003, and denominated First American Title Trust No. 8435 (the "Senior Trust Agreement") pertaining to certain real property described therein as the "Spurlock Property".

B. Trustee, Second Beneficiary, and WVSV are the current parties to that certain Trust Agreement dated as of July 16, 2003, and denominated First American Title Trust No. 8436 (the "Junior Trust Agreement") pertaining to certain real property described therein as the "10K Property" and the interest of Second Beneficiary in the Senior Trust Agreement.

C. First Beneficiary, Second Beneficiary, WVSV and Trustee (collectively, the "Parties") wish to amend the Senior Trust Agreement, subject to and in accordance with the terms, covenants and provisions of this Amendment.

NOW, THEREFORE, in consideration of the execution and delivery of the Agreement, the foregoing Recitals, the mutual agreements, covenants and promises contained in this Amendment and other good and valuable considerations, the receipt, sufficiency and validity of which are hereby acknowledged, Trustee, First Beneficiary and Second Beneficiary confirm and agree as follows:

1. <u>Definitions</u>. Capitalized terms used in this Amendment without definition shall have the meanings assigned to such terms in the Agreement, unless the context expressly requires otherwise.

2. <u>First Beneficiary</u>. First Beneficiary and WVSV have entered into and funded that certain Loan Agreement dated July __, 2015 ("Loan Agreement"), by and between First Beneficiary as lender and WVSV as borrower, whereby the obligation to pay the balance of the Purchase Price and all accrued interest has been fully paid to the prior holders of the First Beneficial Interest under the Senior Trust Agreement. Trustee, Second Beneficiary, and WVSV confirm and agree that First Beneficiary now holds 100% of the First Beneficial Interest under the Senior Trust Agreement.

3. <u>Spurlock Property</u>. The Parties confirm that the portion of the Spurlock Property that remains subject to the Agreement is that real property legally described on Exhibit "A" to this Amendment. Subject to the provisions of Section VI of the Agreement, all references in the Agreement to the "Spurlock Property" shall be deemed references to the property described on Exhibit "A" attached to this Amendment.

4. <u>Purchase Price</u>. The Parties confirm and agree that, as of the date of this Amendment, the unpaid portion of the Purchase Price is Four Million Six Hundred Twelve Thousand Eighty Three and 20/100

1

Dollars ($4,612,083.20) and that interest shall accrue on the Purchase Price from the date hereof as provided in this Amendment.

5. <u>Payment Terms</u>. The terms of Paragraph (B) of Section V of the Senior Trust Agreement are amended to provide that interest on unpaid portion of the Purchase Price shall accrue at the rate of nine and one-half percent (9.5%) per annum, and that interest shall be paid monthly, with the first payment due 30 days from the date hereof, and on like date each month thereafter, with the remaining principal balance to be paid in full on or before July __, 2016 all in accordance with and subject to the terms of the Loan Agreement.

6. <u>Remedies</u>. Paragraph (C) of Section V of the Agreement is amended and restated in its entirety as follows: "(C) If there is a default by Second Beneficiary under this Trust Agreement, the sole remedy of First Beneficiary (except in connection with a default under Section VI(F) of this Trust Agreement) as against Second Beneficiary shall be the retention of the payments from Second Beneficiary to First Beneficiary and the forfeiture or foreclosure of Second Beneficiary's interest in the Trust and Second Beneficiary shall not be liable to First Beneficiary for any deficiency or other damages, except for damages to the Spurlock Property caused by Second Beneficiary. Notwithstanding the provisions of the immediately preceding sentence, First Beneficiary and Second Beneficiary acknowledge and agree that the obligations of Second Beneficiary under Section VI (F) of this Trust Agreement are also secured by that certain Collateral Assignment of Beneficial Interest in Trust and Security Agreement dated July 16, 2003 executed by Second Beneficiary as Assignor and delivered to First Beneficiary, as Assignee, as amended (the "Collateral Assignment") and the exercise by First Beneficiary of its remedies, as assignee under the Collateral Assignment, shall not be subject to the limitation on remedies set forth in this Section (C)."

7. The first sentence of the full paragraph on page 10 of the Agreement in Section VI(F) is rewritten to read as follows:

> The payments that are to be made by the Second Beneficiary to the First Beneficiary pursuant to the third paragraph of this Section VI(F) shall be from principal payments that are payable to Second Beneficiary as part of the Purchase Price of the 10K Property pursuant to the Junior Trust Agreement.

8. The paragraph entitled "Second Priority" set forth in Section IX(B) is hereby deleted in the entirety.

Additionally, the second sentence in the paragraph entitled "Third Priority" in Section IX(B) is hereby deleted.

9. <u>Estoppel and Waiver</u>. Second Beneficiary and WVSV hereby affirm by execution of this Amendment that to the best of their knowledge, the Senior Trust Agreement is in full force and effect and neither Second Beneficiary nor WVSV has any presently existing claim (and herby waives the same) against First Beneficiary or Trustee or any offsets against the Purchase Price payable under the Senior Trust Agreement. To the best of the knowledge of Second Beneficiary and WVSV, there are no defaults of First Beneficiary or Trustee under the Agreement and there are no existing circumstances which, with the passage of time or the giving of notice or both, would constitute a default by First Beneficiary or Trustee under the Agreement.

10. <u>Full Force and Effect; authority</u>. The Parties confirm and acknowledge that except as expressly

2

modified by this Amendment, the Senior Trust Agreement remains unmodified and in full force and effect. All references in the Senior Trust Agreement to "this Agreement" or "this Trust Agreement" shall be deemed references to the Senior Trust Agreement as modified by this Amendment. Second Beneficiary and WVSV are fully authorized and permitted to enter into this Agreement, to execute any and all documentation required herein, and to perform the terms of this Agreement and no third party consents are required (or if required, have been obtained).

11. <u>Counterparts</u>. This Amendment may be executed in one (1) or more counterparts and the signature pages combined to constitute one (1) document.

IN WITNESS WHEREOF, the Parties have executed and delivered this Amendment as of the date and year first above written.

[The balance of this page is intentionally blank.]

3

FIRST BENEFICIARY

PACIFIC COACH, INC., an Arizona Corporation


By:_____
Name: _____
Title: _____


STATE OF ARIZONA      )
                         ) ss.
County of Maricopa       )


On this, the _____ day of July, 2015, before me the undersigned Notary Public, personally appeared _____, the _____ of Pacific Coach, Inc., who acknowledged that he executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.


In witness whereof, I have hereunto set my hand and official seal.


_____
Notary Public


4

SECOND BENEFICIARY

10K, L.L.C., an Arizona limited liability company

By: _____
Name: R. Randy Stolworthy
Its: Manager


STATE OF ARIZONA       )
                               ) ss.
County of Maricopa         )


On this, the _____ day of July, 2015, before me the undersigned Notary Public, personally appeared R. Randy Stolworthy, the Manager of 10K, L.L.C., who acknowledged that he executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.

In witness whereof, I have hereunto set my hand and official seal.


_____
Notary Public

5

WVSV

WVSV HOLDINGS, LLC, an Arizona limited liability company by West Valley Ventures, LLC, its Manager


By:_____

Name: _____

Title: _____


State of ARIZONA   )

                     )

County of Maricopa   )


On this, the _____ day of July 2015, before me the undersigned Notary Public, personally appeared _____, the _____ of West Valley Ventures, LLC, as Manager of WVSV Holdings, L.L.C., an Arizona limited liability company, who acknowledged that he executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.

In witness whereof, I have hereunto set my hand and official seal.


_____

Notary Public

6

TRUSTEE

FIRST AMERICAN TITLE INSURANCE CO., a Nebraska corporation (redomesticated from California effective July 1, 2014), as Trustee under Trust No. 8435, and not personally

By:_____

Name:_____

Its: Trust Officer

STATE OF _____)

                     )

County of                )

       On this, the _____ day of July 2015, before me the undersigned Notary Public, personally appeared _____, Trust Officer for First American Title Insurance Company, in the capacity as Trustee, who acknowledged that he/she executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.

       In witness whereof, I have hereunto set my hand and official seal.


_____

Notary Public

7

## ACKNOWLEDGMENT AND CONSENT

The undersigned, having formerly held an undivided 44.20% interest as a First Beneficiary of the Senior Trust Agreement, as such term is defined in the First Amendment to Trust Agreement ("Amendment") to which this Acknowledgment and Consent is attached, hereby acknowledges that it has received payment in full of all sums to which it was entitled on account of such interest as First Beneficiary of the Senior Trust, and further acknowledges that the undersigned has no further right, title, interest, or standing as a beneficiary of the Senior Trust, and further consents to the foregoing Amendment.

SUNVAL PARTNERS, LLC, an Arizona limited liability company

By:_____
Name: _____
Title: _____

State of ARIZONA    )
                 )
County of Maricopa    )

On this, the _____ day of July 2015, before me the undersigned Notary Public, personally appeared _____, the _____ of Sunval Partners, LLC, an Arizona limited liability company, who acknowledged that he executed the foregoing instrument in the capacity thereon stated, for the purposes therein contained.

In witness whereof, I have hereunto set my hand and official seal.

_____
Notary Public